Aaron Kaufmann, State Bar No. 148580
David Pogrel, State Bar No. 203787
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
akaufmann@leonardcarder.com
dpogrel@leonardcarder.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LOPEZ YANEZ, KAYASONE MUONGKHOT and JULIO RUBIO on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>HL WELDING, INC.,<br><br>Defendant. | CASE NO. **3:20-CV-01789 BEN MDD**<br><br>**NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION AND PRIVATE ATTORNEYS' GENERAL ACT SETTLEMENT**<br><br>Hearing Date:  July 12, 2021<br>Time:  10:30 a.m.<br>Location:  Courtroom 5A, 5th Fl.<br>Judge:  Hon. Roger T. Benitez |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

I.    INTRODUCTION...................................................................................................... 1

II.   BACKGROUND........................................................................................................ 2

   A.   Plaintiffs' Factual Allegations................................................................... 2

   B.   Procedural Background .............................................................................. 3

III.  PROPOSED SETTLEMENT..................................................................................... 6

   A.   Settlement Class and Subclass Definitions................................................ 7

   B.   Settlement Terms Plan of Distribution ..................................................... 8

IV.   ARGUMENT ........................................................................................................... 13

   A.   Conditional Certification of the Rule 23 Class is Appropriate............... 13

      1.   The Settlement Class Satisfies the Requirements of Rule 23(a).................... 14

      2.   The Settlement Class Meets the Requirements of Rule 23(b)(3).................... 16

   B.   Preliminary Approval is Appropriate Because the Settlement is Fair, Reasonable and Adequate .......................................................................... 17

      1.   Settlement is the Product of Informed, Non-Collusive Negotiation............. 17

      2.   The Settlement Falls Within the Range of Possible Approval ..................... 18

         a.   The Relative Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval............................................................................ 19

         b.   The Benefit Conferred by the Settlement Balances in Favor of Approval ................. 20

      3.   Extent of Investigation and Discovery Completed Supports Preliminary Approval.... 21

      4.   Experience and Views of Counsel Support Preliminary Approval............................ 222

      5.   The Scope of the Release Provision in the Settlement Agreement is Appropriate....... 22

      6.   Timeline ........................................................................................................ 23

      7.   The Proposed Class Notice is the Best Notice Practicable ........................... 26

V.    CONCLUSION ........................................................................................................ 27

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMNARY APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION AND PAGA SETTLEMENT
Case No. 3:20-CV-01789 BEN MDD

1

## TABLE OF AUTHORITIES

2

**Cases**

*Arias v. Super. Ct.,*
  46 Cal. 4th 969 (2009)..................................................................................14

*Boyd v. Avanquest N. Am., Inc.,*
  No. 12-cv-04391-WHO, 2015 WL 4396137 (N.D. Cal. July 17, 2015) ...............13

*Custom Led, LLC v. eBay, Inc.,*
  No. 12-CV-00350-JST, 2013 WL 4552789 (N.D. Cal. Aug. 27, 2013)................16

*EEOC v. Kovacevich "5" Farms,*
  No. CV-F-06-165 OWW/TAG, 2007 WL 1174444 (E.D. Cal. Apr. 19, 2007).....14

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998)..................................................................14, 15, 16

*Harris v. Vector Mktg. Corp.,*
  No. C-08-5198 EMC, 2011 WL 1627973 (N.D. Cal. Apr. 29, 2011) ...................17

*In re Tableware Antitrust Litig.,*
  484 F.Supp.2d 1078 (N.D. Cal. 2007) ............................................................17, 18

*Larsen v. Trader Joe's Co.,*
  No. 11-cv-05188-WHO, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...............22

*Mazza v. Am. Honda Motor Co., Inc.,*
  666 F.3d 581 (9th Cir. 2012)..................................................................................14

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco,*
  688 F.2d 615 (9th Cir. 1982)............................................................................17, 18

*Ohayon v. Hertz Corp.,*
  No. 5:11-cv-01662 EJD, 2012 WL 4936058 (N.D. Cal. Oct. 16, 2012) ...............27

*Satchell v. Fed. Express Corp.,*
  No. C03-2659 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)..........................18

*Smith v. Cardinal Logistics,*
  No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ............................14

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ii

*Soc. Sers. Union, Local 535 v. County of Santa Clara*,
   609 F.2d 944 (9th Cir. 1979).......................................................................15

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09-00261 SBA (EMC), 2012 WL 5878390
   (N.D. Cal. Nov. 21, 2012) ................................................................18, 21

**Statutes**
Fed. R. Civ. P. Rule
   23 ..............................................................................................*passim*

**Other Authorities**
Manual for Complex Litigation
   §21.632 (4th ed. 2004) ...........................................................................14

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 12, 2021 at 10:30 a.m., or as soon thereafter as the matter may be heard, before the Hon. Roger T. Benitez, United States District Court for the Southern District of California, located at 221 West Broadway, San Diego, California in Courtroom 5A, 5th Floor, Plaintiffs Luis Lopez Yanez, Kayasone Muongkhot and Julio Rubio ("Plaintiffs") will and hereby do respectfully move this Court for preliminary approval of the proposed Collective, Class action and Private Attorney General Act settlement.

Plaintiffs request that this Court enter an Order (1) conditionally certifying the Rule 23 settlement class; (2) granting preliminary approval to the proposed Class and Collective Action Settlement; (3) appointing Plaintiffs as class representatives of the Class and as representative Plaintiffs for the collective action; (4) appointing Plaintiffs' attorneys as Class Counsel; (5) appointing Simpluris, Inc. ("Simpluris") as Settlement Administrator; (6) approving the form, content, and method of distribution of the Notice of Class Settlement and Estimated Share Form; (7) scheduling a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and Service Awards to the Named Plaintiffs.

This motion is made on the ground that proposed settlement is the product of arm's length negotiations by qualified class counsel with the assistance of an experienced and renowned neutral mediator. Its terms are fair, reasonable and adequate in light of the risks the Plaintiffs and Class Members face in connection with continuing to litigate liability, and proof of damages. Defendant does not oppose this motion.

This motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities; the Declaration of David Pogrel and Exhibits thereto; the Proposed Order; the Court's record of this action; all matters of which the Court may take notice, and any other such evidence, briefing, or argument

that may be presented to the court at or before the time of hearing.

DATED:  June 4, 2021          Respectfully submitted,

**LEONARD CARDER, LLP**

By: _ /s/ David Pogrel_____
        David Pogrel

*Attorneys for Plaintiffs and the Putative Class*

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION AND PAGA SETTLEMENT
Case No. 3:20-CV-01789 BEN MDD

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**

**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL**

# I.     INTRODUCTION

Plaintiffs Luis Lopez Yanez, Kayasone Muongkhot and Julio Rubio ("Plaintiffs" or "Class Representatives"), seek preliminary approval of an $858,000 class, collective and Private Attorneys General Act ("PAGA") representative action settlement on behalf of approximately 600 current and former Tradespeople for HL Welding, Inc. ("HL Welding" or "Defendant"). This proposed settlement is intended to resolve this action and also a related action currently pending in the Superior Court of San Diego entitled *Muongkhot, et. al. v. HL Welding, Inc*., (San Diego Sup. Ct., Case No. 37-2019-00054150-CU-OE-CTL) ("*Muongkhot* Action"). The settlement resolves California and federal Fair Labor Standards Act (FLSA) overtime and related claims.

The gravamen of Plaintiffs' Complaint in this action and the *Muongkhot* Action is that HL Welding has used a pay scheme to deprive Tradespeople of wages by paying a "per diem" in addition to hourly wages, but not including the *per diem* rate in its calculation of overtime pay. As a result, HL Welding has not paid overtime using the proper "regular rate of pay" required by the FLSA and California law. Plaintiffs further allege derivative claims that HL Welding failed to provide accurate wage statements, and that certain Tradespeople they are due waiting time and PAGA penalties. The settlement provides substantial relief and there will be no submission of claims required of any workers to participate in the settlement.

The proposed settlement is the product of arm's length negotiations by experienced counsel with a neutral and well-regarded mediator. It is fair, reasonable and adequate in light of the risks the Plaintiffs and Tradespeople face in connection with continued litigation over class membership, liability, arbitration agreement disputes, proof of damages, and other defenses asserted by Defendant. Accordingly, Plaintiffs request that the Court (1) conditionally certify the Rule 23 settlement class;

1

(2) grant preliminary approval to the proposed class and collective action settlement; (3) appoint Plaintiffs as representatives of the Class; (4) appoint Plaintiffs' attorneys as Class Counsel; (5) appoint Simpluris, Inc. ("Simpluris") as Settlement Administrator; (6) approve the form, content, and method of distribution of the Notice of Class and PAGA Settlement and Estimated Share Form; and (7) schedule a hearing regarding final approval of the proposed Settlement, Class Counsel's request for attorneys' fees and costs, and service awards to the Plaintiffs.

## II.    BACKGROUND

### A. Plaintiffs' Factual Allegations

HL Welding is a staffing agency that provides workers to maritime construction contractors for work building marine vessels. HL Welding's primary operations are in San Diego, but it has also employed Tradespeople on shipyard projects in Alabama, Florida, Mississippi, Pennsylvania, Virginia, and Washington. The Tradespeople who most commonly perform work for HL Welding are Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers. Plaintiffs all worked for HL Welding on projects in San Diego.[1]

HL Welding has had a common policy of compensating Tradespeople with a *per diem* rate, in addition to their hourly rate of pay, throughout the liability period. Prior to February 29, 2016, HL Welding paid the *per diem* hour-for-hour based on total hours worked. Each Tradesperson received a base hourly wage of $14 to $20 per hour, plus a *per diem* of $18 per hour.   Effective February 29, 2016, HL Welding implemented a new pay plan that adjusted the *per diem* to a pro-rated daily payment. The new *per diem* was initially set at $144/day, equivalent to the $18 hourly *per diem* rate under the prior policy ($18/hour x 8 hours/day = $144/day). Tradespeople who worked over six hours per day received the full $144. Those working less than six hours were subject to a pro-rata reduction based on an eight-

---

[1] Angel Lopez Yanez worked as Pipefitter and Sheet Metal worker, Kayasone Muongkhot was a Ship Fitter, and Julio Rubio was a Welder.

hour day. HL Welding later increased the *per diem* amount from $144/ per day to $150/ per day.

HL Welding has never considered the *per diem* payment in calculating the "regular rate of pay," and thus has not paid overtime premiums on this portion of any Tradespersons' wages. HL Welding justifies its non-payment of overtime by claiming that the *per diem* was paid as a non-taxed "reimbursement" for travel expenses paid to employees who reside outside the local work area.

**B. Procedural Background**

On October 10, 2019, Plaintiff Muongkhot filed a class action complaint against HL Welding in San Diego Superior Court ("*Muongkhot* Action"). See Declaration of David Pogrel in Support of Plaintiffs' Motion for Preliminary Approval ("Pogrel Decl."), ¶¶ 15-16. The initial complaint was filed on behalf of a putative class of Welders, Ship Fitters, and other similarly situated employees employed in California on or after October 10, 2015. As the statute of limitations had run on several potential claims because of when Muongkhot left his employment at HL Welding, his initial case was limited to a claim for violations of California's Unfair Competition Law – Business and Professions Code 17200, *et. seq. Id.* On February 10, 2020, Plaintiff Julio Rubio retained Plaintiffs' counsel with the intention of being a Plaintiff in the *Muongkhot* Action. Pogrel Decl., ¶ 18.

On February 12, 2020, following Defendant's answer in the *Muongkhot* Action and service of Plaintiff Muongkhot's initial discovery, Defendant's counsel first contacted Plaintiffs' counsel to propose mediation. Pogrel Decl., ¶ 19. At that time Defendant's counsel further revealed that many members of the putative class had signed arbitration agreements with HL Welding that included a class action waiver which, in the view of Defendant, precluded their participation in any class action as either a plaintiff or class member. *Id.*

In late February 2020, Defendant produced a signed arbitration agreement for Mr. Rubio that Plaintiffs' counsel determined would likely preclude him from

3

serving as a class representative, but he could serve as a representative plaintiff for a claim under PAGA. Pogrel Decl., ¶ 20. On February 13, 2020, Plaintiffs' counsel initiated the 65-day administrative exhaustion process with the California Labor and Workforce Development Agency (LWDA) that was required before Mr. Rubio could join the *Muongkhot* Action as a PAGA representative plaintiff. *Id.*

During the March to June 2020 period, the Parties continued to explore mediation and negotiate informal discovery, as Plaintiffs' counsel provided repeated extensions on Defendant's formal discovery responses and initial document production. Pogrel Decl., ¶ 22. The negotiations over informal discovery included Plaintiff seeking the contact information for the putative class, in addition to the documents and other information counsel believed was relevant to become informed about HL Welding's potential defenses in the *Muongkhot* Action. *Id.* Plaintiff also sought class wide data to determine the scope of Defendant's potential exposure and information about the arbitration agreements Defendant claimed to have executed with a number of putative class members. *Id.* Also in June 2020, Plaintiffs' counsel proposed that HL Welding agree to the terms of a tolling agreement that would pause any statutes of limitation on any overtime claims for class members and enable the parties to discuss settlement without additional litigation. Pogrel Decl., ¶ 23.

In June 2020, Following several months of negotiation about the parameters of a mediation, Defendant's counsel informed Plaintiffs' counsel that Defendant would only consider mediation of claims by Tradespeople who the company claimed had not signed arbitration agreements. Pogrel Decl., ¶ 24. Defendant also refused at that time to sign the tolling agreement that Plaintiffs had proposed and agreed to provide only limited information for negotiations. *Id.* As a result, on June 19, 2020 Plaintiffs decided to forgo mediation and continue the litigation. *Id.*

Litigation of the *Muongkhot* Action during the April to July 2020 period was complicated extensively by COVID-19. Pogrel Decl., ¶ 22. These complications included COVID-19 outbreaks among Defendant's employees and significant other

economic impacts that limited Defendant's engagement in the litigation. Plaintiffs' counsel continued its investigation during this period and was retained by a number of additional employees seeking to join the *Muongkhot* Action. *Id.*

In July 2020, Plaintiffs sought a stipulation in the *Muongkhot* Action to add additional plaintiffs and provide an expanded class definition to include all class positions in addition to Welders and Shipfitters. Pogrel Decl., ¶ 25. Defendant declined to stipulate, thus requiring that Plaintiffs file a Motion for Leave to Amend. Due to the court's calendar, Plaintiffs' motion could not be heard until October 23, 2020. *Id.*

On September 11, 2021, Plaintiff Yanez filed the instant action. Pogrel Decl., ¶ 26. While the allegations here are almost identical to the *Muongkhot* Action, Plaintiff and counsel viewed this additional case as necessary for three reasons. First, Defendant had refused to sign a tolling agreement that could have precluded the need to file the additional litigation for additional putative class members. *Id.* Second, the new case expanded the class definition, necessary in the event that the court in the *Muongkhot* Action denied Plaintiffs' motion for leave that would not be decided for at least six more weeks. *Id.* Third, this action expanded the claims to include employees outside California, asserting a collective action under the FLSA. *Id.*

On October 21, 2020, the court in the *Muongkhot* Action issued a tentative ruling granting Plaintiffs' Motion for Leave to Amend. Pogrel Decl., ¶ 28. Following this ruling, Defendant again proposed that the parties engage in mediation, now with further expanded parameters to cover employees with claims under PAGA (including those who signed arbitration agreements) and non-California employees with FLSA claims who did not sign arbitration agreements. *Id.*

During October and November 2020, the Parties further negotiated the parameters for mediation and also the discussed the means by which Plaintiffs' counsel could access class member contact information and data required for mediation. Pogrel Decl., ¶ 29. The parties reached agreement on the parameters in

early December 2020, including the selection of experienced employment law mediator Scott Markus. *Id.* Due to scheduling conflicts, the mediation was scheduled for March 24, 2021. *Id.*

The parameters for mediation included that negotiations would focus on three groups of employees: (1) a California subclass who did not sign arbitration agreements and worked on or after October 15, 2019 ("California subclass"); (2) an FLSA collective who did not sign arbitration agreements and worked on or after September 15, 2017 ("FLSA subclass"); and (3) a PAGA representative group who have worked on or after February 13, 2019, irrespective of whether or not they signed an arbitration agreement ("PAGA Recipients"). Categories (2) and (3), above, are in addition to the employees for whom Defendant agreed to negotiate a potential settlement in June 2020. Pogrel Decl., ¶ 30.[2]

The Parties and counsel prepared for and participated in a full day of video mediation on March 24, 2021. At the end of the mediation session, the Parties agreed upon a settlement in concept, after the mediator issued a mediator's proposal, and signed a Memorandum of Understanding. Pogrel Decl., ¶ 33. Further negotiations followed regarding the terms of the long-form settlement agreement and notice documents. These negotiations, and all disputed issues, were resolved on June 3, 2021 and resulted in a signed settlement agreement. *Id.*

## III.    PROPOSED SETTLEMENT

The details of the settlement are set forth in the Joint Stipulation Settlement of Class Action and Collective Action Settlement and Release Agreement and Release ("Settlement Agreement"). See Pogrel Decl., Exh. 1. A summary is set forth below:

---

[2] To facilitate mediation, Defendant also agreed to the terms of a tolling agreement that meant Plaintiffs did not need to file any amended complaints in either this action or the *Muongkhot* Action, and that Plaintiff Yanez also did not need to file his motion for collective action notice. Pogrel Decl., ¶ 31.

**A. Settlement Class and Subclass Definitions**

HL Welding agrees, for settlement purposes only, to certification of the following class and two subclasses:

"Settlement Class" and "Settlement Class Members" shall mean all current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers at any time from October 1, 2015 and June 30, 2021 and who have not signed arbitration agreement with class/collective action waiver with HL Welding and who fall within one of the following two subclasses:

California Subclass: All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in California at any time between October 1, 2015 and June 30, 2021 (the "California Subclass Period") and who have not signed arbitration agreement with class/collective action waiver with HL Welding.

FLSA Subclass: All current and former employees of HL Welding who employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in states other than California at any time between September 15, 2017 and June 30, 2021 (the "FLSA Subclass Period") and who have not signed arbitration agreement with class/collective action waiver with HL Welding.

The proposed class and subclass definitions are different from the definitions in the operative complaint in the following respects: the revised definitions (1)

7

finalize the Class Period end date of June 30, 2021, (2) create two subclasses, and (3) clarify that only Tradespeople who did not sign arbitration agreements are included in the class settlement and subject to the class release. That is, any Tradesperson who signed an arbitration agreement retains his/her right to bring an individual arbitration for the overtime and related claims at issue in this litigation.

Separately, a third group of employees – the PAGA Recipients – is entitled to collect from the PAGA allocation of the settlement, with a correspondingly narrow release of claims. The PAGA Recipients are defined as follows:

"PAGA Recipient(s)" means all means all current and former employees of Defendant who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in California at any time between February 13, 2019 and June 30, 2021 (the "PAGA Period").

Based on HL Welding records, reflected in Exhibits C – E to the Settlement Agreement, there are 75[3] individuals in the California Subclass, 24 in the FLSA Subclass and 514 in the PAGA Recipients. Settlement Agreement ¶ 4, Exhs. C - E.

**B. Settlement Terms Plan of Distribution**

A summary of the settlement terms is as follows:

1.  Settlement Fund: Defendant to create a non-reversionary $858,000 Gross Settlement Amount. In addition, HL Welding will separately pay for the "employer's share" of employment taxes (FICA, FUTA, SDI) on any payments classified as W-2 income or wages, over and above the Gross Settlement Amount.

2.  Class Representative Service Payments: Plaintiffs request that $15,000 from the Gross Settlement Amount be set aside for class representative service awards for Plaintiffs, with each Plaintiff allocated $5,000 for his

---

[3] 74 listed in Exhibit A, plus Plaintiff Julio Rubio.

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION AND PAGA SETTLEMENT
Case No. 3:20-CV-01789 BEN MDD

1    service to the class. These amounts are to compensate Plaintiffs for (1)

2    the risks they have incurred on behalf of the Settlement Class in this

3    Action, (2) the time and effort they have spent, including assisting in the

4    investigation and consulting with counsel regarding all aspects of the

5    litigation and settlement, and (3) the releases they are providing

6    pursuant to the Settlement Agreement, which are broader than those of

7    other Class Members.

8         At the final approval hearing, Plaintiffs' counsel will move the

9    Court for service awards totaling $15,000. Counsel will provide

10   evidence and support for the requested service awards at the time they

11   submit their fee application. Settlement Agreement, ¶¶ 57-58.

12   3.   <u>Class Counsel's Fees and Expenses</u> – Plaintiffs request that the Court

13        preliminarily approve their attorneys' fees in the amount of one-third

14        (33-1/3%) of the Gross Settlement Amount, or $286,000, plus litigation

15        expenses up to a maximum of ten thousand dollars ($10,000). Counsel

16        will provide evidence and support for the requested fees and expenses at

17        the time they submit their fee application. Settlement Agreement, ¶ 62.

18   4.   <u>PAGA Penalty Payments</u>– The parties have designated $100,000 of the

19        Gross Settlement Amount to resolve claims under PAGA. Thus, under

20        Labor Code Section 2699(i), 75 percent, or $75,000 of the penalty

21        payment will be paid to the California Labor and Workforce

22        Development Agency. The remaining $25,000 of the PAGA Payment

23        will be distributed the 514 PAGA Recipients. Plaintiffs will provide a

24        copy of the Settlement Agreement to the LWDA at the time the

25        Agreement is submitted to the Court for approval per Cal. Labor Code

26        §2699(l)(2). Agreement, ¶¶ 63-64.

27   5.   <u>Net Settlement Fund</u> – The Net Settlement Fund – the amount that will

28        remain of the Settlement after deduction of amounts for awards of

attorneys' fees and costs, notice and settlement administration expenses, Named Plaintiffs' service awards, and PAGA payment – will total approximately $435,000.[4]  This amount will be distributed to Class Members on a pro-rata basis (based on workweeks in the applicable statutory periods) following Defendant's second of three fund deposits, as described in paragraphs 8 and 9, below.

6.    No Claims Made Procedure: Settlement Class Members will not be required to file claims in order to receive their share of the Net Settlement Fund. They will however have the opportunity to correct any errors in HL Welding's records to their number of weeks worked as Tradespeople in California. Agreement, ¶ 87.

7.    Settlement Administration – The Settlement Administrator will be Simpluris, Inc. The Settlement Administrator will, among other things, independently review the Defendant's records as to the workweeks of the Settlement Class Members and pay periods by PAGA Recipients and calculate the amounts due to Settlement Class Members and PAGA Recipients; send to the Class Members and PAGA Recipients the Class Action and PAGA Notice and the Estimated Share Form; take appropriate steps to trace and locate missing individuals; respond to inquiries; receive and independently review and resolve any challenges and associated documentation; draw and distribute checks to Settlement Class Members, PAGA Recipients, and the LWDA; administer the Settlement Fund; prepare and file any necessary tax reporting for the Settlement Fund; and report to the Court on the notice/opt out process and payment of the Settlement Fund. All disputes relating to the Settlement Administrator's performance of its duties shall be referred to

---

[4] Pogrel Decl., ¶ 40.

the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of the Settlement Agreement until all payments and obligations contemplated by the Settlement Agreement have been fully carried out. Agreement, ¶¶ 77-79.

8.  <u>Transfer and Deposit of Settlement Funds</u>:  Defendants shall transfer the settlement funds to the Settlement Administrator in three installment payments as follows:

    a.  Defendant shall make a first payment/installment of $286,000, plus fifty percent (50%) of any amounts required for Defendants' share of employer-side payroll taxes, no later than 10 calendar days after the date on which the Court grants final approval of the settlement;

    b.  Defendant shall make a second payment/installment of $286,000, plus fifty percent (50%) of any amounts required for Defendants' share of employer-side payroll taxes, no later than 50 calendar days after the date on which the Court grants final approval of the settlement; and

    c.  Defendant shall make a third payment/installment of $286,000, intended to cover attorney's fees' (if approved), no later than 300 calendar days after the date on which the Court grants final approval of the settlement. Agreement, ¶ 69.

9.  <u>Timing of Distribution of Settlement Funds</u>:  The Settlement Agreement includes the following schedule for distribution of the settlement funds, if the Court grants Plaintiffs' requests for Plaintiff service awards and Counsel's fees and costs:

    a.  Within 150 days after final approval (following deposit 2, above), payments to be distributed to the Settlement Class Members, PAGA Recipients, California LWDA, Settlement Administrator,

11

1    Plaintiffs (service awards) and Class Counsel (expenses only);

2    and

3        b.  Within 300 days after final approval (following deposit 3, above),

4    payment to be distributed to Class Counsel for attorneys' fees.

5    Agreement, ¶ 70.

6    10.   <u>Tax Treatment of Settlement Payments</u>:  Individual Payment Amounts

7    to Class Members will be allocated as follows: 26% will be allocated to

8    wages, subject to tax withholdings; 34% allocated to interest; and 40%

9    allocated to penalties. No taxes will be held for penalty or interest

10   allocations. The Settlement Administrator shall issue a Form 1099-INT

11   for the interest allocation, a Form 1099-MISC for the penalty allocation,

12   and a Form W-2 for the wage allocation. Agreement, ¶ 71.

13   11.   <u>Class Notice and Notice Procedure</u> – A Notice of Class Action and

14   PAGA Settlement ("Notice") in substantially the form attached as

15   Exhibit A to the parties' Settlement Agreement, and as approved by the

16   Court, shall be sent by the Settlement Administrator to the Class

17   Members by First Class U.S. Mail. Accompanying the Notice will be an

18   Estimated Share Form in substantially the form attached as Exhibit B to

19   the Settlement Agreement, and as approved by the Court. The Notice

20   and Estimated Share Form are collectively referred to herein as the

21   "Notice Packet." Any returned Notice Packets from this mailing with

22   forwarding addresses will be used by the Settlement Administrator to

23   forward the Notice Packet to the Settlement Class Members. If there is

24   no forwarding address, the Settlement Administrator will do a "skip

25   trace" search for a new address and re-mail the Notice Packet within

26   five (5) calendar days. Settlement Agreement, ¶¶ 80-84.

27   12.   <u>Scope of Release – Class Members</u> – The release for the Settlement

28   Class Members corresponds to the operative claims in the Complaint,

12

releasing claims asserted, or that could have been asserted based on the alleged facts, arising from and related to Defendant's alleged failure to properly pay overtime compensation, provide accurate wage statements, and pay all wages due upon termination.  The Settlement Class Member release also includes related claims brought pursuant to Cal. Business and Professions Code sections 17200 *et seq.* Settlement Agreement, ¶¶ 100-101.

13.   Scope of Release – PAGA Recipients – The scope of the release for the PAGA Recipients for the proposed Settlement is significantly narrower. That is, the PAGA Recipients release only all claims, demands, rights, obligations, liabilities, actions, and causes of action for PAGA penalties under the provisions of law alleged to have been violated in the Action or which could have been alleged based on the facts in the First Amended Complaint during the PAGA Period. The release by PAGA Recipients is not a general releases and shall not extend beyond claims under the PAGA. Settlement Agreement, ¶ 102.

## IV.   ARGUMENT

Federal Rule of Civil Procedure 23 requires Court approval for the proposed settlement, voluntary dismissal or compromise of a certified class or a class proposed to be certified for purposes of settlement. Fed. R. Civ. P. Rule 23(e). The Court's "role in evaluating a proposed settlement is 'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole is fair, reasonable and adequate to all concerned." *Boyd v. Avanquest N. Am., Inc.*, No. 12-cv-04391-WHO, 2015 WL 4396137 *2 (N.D. Cal. July 17, 2015).

### A. Conditional Certification of the Rule 23 Class is Appropriate

In order to review the sufficiency of the settlement, the Court must first determine that the proposed class satisfies the criteria set out in Federal Rules of

13

Civil Procedure Rule 23(a), specifically that: (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) the named plaintiffs and their counsel will adequately and fairly represented the interests of the class. *See* Manual for Complex Litigation §21.632 (4th ed. 2004); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998). Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b) (1), (2), or (3). *Hanlon v. Chrysler Corp.*, 150 F.3d at 1022. Based on these standards, as further discussed below, the Court should certify the proposed Class for settlement purposes.[5]

### 1. The Settlement Class Satisfies the Requirements of Rule 23(a)

The proposed Settlement Class satisfies all the requirements of Rule 23(a).

<u>First</u>, the Settlement Class is sufficiently numerous that it makes joinder impracticable. Fed. R. Civ. P. 23(a)(1). Courts have generally found a class of at least 40 members meets the numerosity requirement. *See, e.g., EEOC v. Kovacevich "5" Farms*, No. CV-F-06-165 OWW/TAG, 2007 WL 1174444, at *21 (E.D. Cal. Apr. 19, 2007). Here, the proposed Class has approximately 100 Tradespeople in the two subclasses, and readily meets this standard.

<u>Second</u>, commonality is satisfied because there "are questions of law and fact common" to the proposed Class. *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) ("Commonality only requires a single significant question of law or fact."); *Smith v. Cardinal Logistics*, No. 07-2104 SC, 2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) (common issues predominate on questions of whether delivery drivers misclassified as independent contractors). Here, there are several common liability issues, namely, whether: (1) class members have been subject to

---

[5] The group of PAGA Recipients does not require certification for settlement purposes. *Arias v. Super. Ct.,* 46 Cal. 4th 969, 980-88 (2009) (affirming lower court's holding that "plaintiff need not satisfy class action requirements" to assert a PAGA claim).

the same "per diem" payment plan; (2) class members are entitled to the overtime protections of the California Labor Code and FLSA; (3) HL Welding has violated its legal obligations under various provisions of the California Labor Code and FLSA; and (4) HL Welding's actions constitute violations of the Unfair Competition Law.

Third, the typicality requirement of Rule 23(a)(3) is satisfied because Plaintiffs' claims are typical of the claims asserted on behalf of the Class. Typicality is established if representative claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Plaintiffs' claims arise out of the same factual and legal circumstances as the claims of other Class Members: like all Class Members, Plaintiffs were subject to HL Welding's "per diem" compensation and have been underpaid according to the California and federal overtime laws and did not receive accurate wage statements. In addition, Class Members no longer providing services to HL Welding, like Plaintiffs, are entitled to waiting time penalties and other penalties.

Fourth, Plaintiffs have fairly and adequately protected the interests of the class and will continue to do so. Fed. R. Civ. P. 23(a)(4). The adequacy requirement is met where the named plaintiffs and their counsel do not have conflicts of interest with other class members, and will vigorously prosecute the interests of the class. *Hanlon*, 150 F.3d at 1020; S*oc. Sers. Union, Local 535 v. County of Santa Clara*, 609 F.2d 944, 946-47 (9th Cir. 1979). Here, Plaintiffs share an interest to prosecute the claims on behalf of themselves and the Class, have vigorously prosecuted the claims to date, and have no conflicts of interest with Settlement Class Members.

In addition, Plaintiffs are represented by experienced counsel. In appointing class counsel, the court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation and the type of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to its representation. Fed. R. Civ. P. 23(g).

1    Plaintiffs' counsel has actively identified, investigated and prosecuted the

2    claims that are the subject of this Settlement; they have decades of extensive

3    experience in class action litigation, including wage-and-hour claims of the type

4    asserted here, have been appointed class counsel in numerous other cases; and have

5    demonstrated that they have the ability and resources to vigorously pursue the claims

6    asserted in this litigation. Pogrel Decl. ¶¶ 6-35. For these reasons, Plaintiffs' counsel

7    and the Plaintiffs meet the adequacy requirement of Rule 23 (a)(4), and Plaintiffs'

8    counsel should be appointed as Class Counsel pursuant to Rule 23(g).

9    **2.  The Settlement Class Meets the Requirements of Rule 23(b)(3)**

10    The Settlement Class satisfies the requirements of Rule 23(b)(3), because

11    common questions "predominate over any questions affecting only individual

12    members," and class resolution is "superior to other available methods for the fair

13    and efficient adjudication of the controversy."

14    First, the Settlement Class satisfies the predominance requirement, which

15    examines whether the proposed class is "sufficiently cohesive to warrant

16    adjudication by representation." *Hanlon*, 150 F.3d at 1022. "When common

17    questions present a significant aspect of the case and they can be resolved for all

18    members of the class in a single adjudication, there is clear justification for handling

19    the dispute on a representative rather than on an individual basis." *Id*. Here, as

20    discussed above, common issues predominate because Plaintiffs' claims turn on a

21    common liability issue suited to class-wide adjudication.

22    Second, Rule 23 (b)(3) is satisfied because resolution of the issues in this case

23    on a class-wide basis is "superior to other available methods for the fair and efficient

24    adjudication of the controversy." *Id*. at 1023. The alternative to a single class action -

25    - numerous individual actions -- would be inefficient and unfair. *See*, e.g., *Custom

26    Led, LLC v. eBay, Inc*., No. 12-CV-00350-JST, 2013 WL 4552789, at *5 (N.D. Cal.

27    Aug. 27, 2013) (superiority established because a "class action would achieve the

28    resolution of the putative class members' claims at a lower cost and would reduce

1   the likelihood of inconsistent determinations"); *Hanlon*, 150 F.3d at 1023 ("many

2   claims [that] could not be successfully asserted individually. . . would not only

3   unnecessarily burden the judiciary, but would prove uneconomic for potential

4   plaintiffs.").

5   **B. Preliminary Approval is Appropriate Because the Settlement is Fair,**
    **Reasonable and Adequate**

6

7       Once the Settlement Class has been conditionally certified, the Court can

8   determine whether the proposed class action settlement warrants preliminary

9   approval by determining the fairness, reasonableness and adequacy of the settlement

10  terms, and, if so, direct that notice be sent to proposed class members, reserving

11  closer scrutiny for the final approval hearing. *See Harris v. Vector Mktg. Corp.*, No.

12  C-08-5198 EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011).

13      Courts should grant preliminary approval of a settlement if it "appears to be

14  the product of serious, informed, non-collusive negotiations, has no obvious

15  deficiencies, does not improperly grant preferential treatment to class representatives

16  or segments of the class, and falls within the range of possible approval." *See In re*

17  *Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts

18  should also apply their discretion in light of the judicial policy favoring settlement of

19  complex class action litigation. *See, e.g., Officers for Justice v. Civil Serv. Comm'n*

20  *of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("[I]t must not be

21  overlooked that voluntary conciliation and settlement are the preferred means of

22  dispute resolution. This is especially true in complex class action litigation . . . .").

23  As discussed below, application of the relevant factors to this case supports

24  preliminary approval.

25      **1. Settlement is the Product of Informed, Non-Collusive Negotiation**

26      Adequate discovery and the use of an experienced mediator tend to support the

27  conclusion that settlement negotiations were informed and non-collusive. *See*

28

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

This Settlement Agreement was the result of thorough negotiations by experienced counsel familiar with the applicable law, class action litigation, and the facts of this case. The parties engaged in written and documentary discovery, in addition to substantial informal discovery and data exchange prior to mediation. Pogrel Decl., ¶¶ 19, 22-23, 27, 31-32. Plaintiffs' counsel was also retained by additional clients and interviewed a number of other affected employees. Pogrel Decl., ¶ 22.

The settlement was reached only after a mediator's proposal was issued at the conclusion of a full day of mediation. Pogrel Decl., ¶ 33. Prior to the mediation, HL Welding provided a large volume of damages data and Plaintiffs' counsel conducted thorough review and analysis of the data and estimate potential damages incurred by the Settlement Class. Pogrel Decl., ¶¶ 36-37. HL Welding provided additional updated following the mediation, which data and Plaintiffs' counsel further analyzed to refine their calculation of estimated potential damages. Pogrel Decl., ¶¶ 36-38.

## 2.  The Settlement Falls Within the Range of Possible Approval

In deciding whether the proposed settlement is adequate and falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer," taking into account the risks of continuing litigation. *See In re Tableware Antitrust Litig.,* 484 F. Supp. 2d at 1080. Courts should recognize that "the agreement reached normally embodies compromise; in exchange for the saving of cost and elimination of risk, the Parties each gave up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624 (internal quotations and citation omitted). Here, the Settlement is fair, adequate, and well within the range of possible approval.

### a. The Relative Strength of Plaintiffs' Case and the Risk of Further Litigation Support Preliminary Approval

While Plaintiffs believe they have strong claims for liability, and that they would prevail on many if not all of their claims, Defendant has several legal and factual grounds to challenge certification, the merits, and damages in this action. The compromise is based on the degree of risk, expense, complexity, and certainty of delay involved in further litigation.

Here, although the Parties have already engaged in discovery, substantial additional litigation would still be necessary to bring this case to a final resolution, including requiring Plaintiffs to obtain class certification, establish class-wide liability, and prove up various complex issues regarding damages. Such efforts would likely take several years, and necessitate expert witness testimony, as well as other costs, risks and potential delays. Appellate risks could further delay and jeopardize recovery. By contrast, the Settlement ensures timely relief and substantial recovery of the wages that Plaintiffs contend are owed to the Settlement Class.

<u>Class Certification</u>:  HL Welding would have opposed Plaintiffs' motion to conditionally certify the FLSA collective action and Plaintiffs' motion to certify the Rule 23 class. In its opposition, HL Welding would likely argue that individual issues would predominate should this case proceed to trial. Specifically, HL Welding would assert that class certification is not appropriate because its defense that its *per diem* pay policy is lawful travel reimbursement can only be determined through an individualized fact-intensive inquiry. That is, it would argue that the class lacked commonality for many reasons, including: (1) the job position and skills of the employees are different; (2) different HL Welding locations have different polices; (3) employees' residences and their relation to individual worksites vary greatly; (4) some Tradespeople signed arbitration agreements; and (5) some putative Class Members did not work any overtime. HL Welding would make these arguments, among others, to support its opposition to conditional and class certification.

While Plaintiffs disagree with Defendant's position and believe that the claims would have been successfully tried on a class-wide basis through representative testimony from Class Members, HL Welding managers' and employees' testimony, statistical sampling and expert testimony, and company documents, they recognize that such procedures raise difficult management and proof issues. Accordingly, there is a risk that the Court may have denied class certification or, if it initially certified the class, later decertified it if the trial procedures became unmanageable.

Arbitration:  In support of its opposition to plaintiff motion for certification, HL Welding would rely in part on the fact that it has executed arbitration agreements with many of the putative class members. There remains a risk that some, or all, of the claims of certain putative Class Members could be forced into arbitration.

Liability on Overtime Claims:  Plaintiffs also recognize that there is a risk on the merits of their claims, as there would likely be disputes over several legal and factual issues. For instance, HL Welding contends that its overtime pay practices were at all times lawful and that *per diem* payments did not qualify as compensation on which overtime is due.

Damage Issues:  Even if Plaintiffs are able to establish liability, there are a number of issues that could impact their ability to establish damages on a class-wide basis. For instance, HL Welding would argue that Plaintiffs and Class Members greatly exaggerate the number of overtime hours worked. Establishing the value of this claim on a class-wide basis at different worksites throughout the United States would present issues of proof as well. Thus, there is a risk that any damage award obtained for the Tradespeople would only be a fraction of the potential exposure calculated by counsel.

### b. The Benefit Conferred by the Settlement Balances in Favor of Approval

"[I]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair.

Rather, the fairness and the adequacy of the settlement should be assessed relative to risks of pursuing the litigation to judgment." *Villegas,* 2012 WL 5878390, at *6 (internal quotations and citations omitted).

The Settlement will result in payment of an outstanding award to Settlement Class Members, particularly in light of the litigation risks. The Settlement affords essentially full relief to Tradespeople who likely would never have filed individual claims. That is, the $435,000 Net Settlement Fund represents more than 100% of Plaintiffs' counsel's best estimate of the maximum verdict value of the Class' potential recovery of all overtime wages, interest and liquidated damages, assuming all factual and legal disputes would be resolved in Plaintiffs' favor and they would obtain the full value of their claimed damages. Pogrel Decl., ¶ 45. The settlement will result in a payment of approximately $144 for each week worked by the Settlement Class Members, with an additional $49, on average, to PAGA Recipients. Pogrel Decl., ¶¶ 42-43. Estimated payments to the Settlement Class Members will average $4,400, with the highest awards ranging between $14,000 and $37,300. Pogrel Decl., ¶ 42.

### 3. Extent of Investigation and Discovery Completed Supports Preliminary Approval

Plaintiffs' counsel conducted sufficient investigation and discovery. The parties exchanged written and documentary discovery, while Plaintiffs' counsel also interviewed many putative class members and prepared a thorough analysis of voluminous damages data. Pogrel Decl., ¶¶ 19, 22-23, 27, 31-32. The factual investigation, discovery and litigation conducted in this matter, enabled Plaintiffs' counsel to have a sound understanding of the merits of their positions and to evaluate the worth of the claims of the Settlement Class. Based on the evidence and counsel's experience, Plaintiffs and their counsel were able to make an informed determination that the settlement is in the best interests of the Class. Pogrel Decl., ¶¶ 45-47.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4.  Experience and Views of Counsel Support Preliminary Approval

"Parties represented by competent counsel are better position than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Larsen v. Trader Joe's Co*., No. 11-cv-05188-WHO, 2014 WL 3404531, at *5 (N.D. Cal. July 11, 2014). In determining whether proposed settlements are fair, reasonable, and adequate, courts are entitled to give consideration to the opinions of competent counsel familiar with the case. *Id*. Here, Plaintiffs and the Settlement Class are represented by competent and experienced counsel, with decades of experience with wage and hour class actions, including cases in the delivery service industry. Pogrel Decl., ¶¶ 6-13. Counsel recommends the proposed settlement as fair, adequate and reasonable to the class members and in their best interests. Pogrel Decl., ¶ 5. Defendant does not oppose the motion.

### 5.  The Scope of the Release Provision in the Settlement Agreement is Appropriate

In return for the settlement award, Plaintiffs and Settlement Class Members will release claims in this Action. The releases are separated into three groups -- releases for claims by Settlement Class Members, releases by PAGA Recipients, and releases by Plaintiffs/Class Representatives. Settlement Agreement, ¶¶ 100-103.

The releases for the Settlement Class Members are limited to claims that were asserted in the operative complaint, or if not asserted which could have been asserted. Such language is standard and is limited by language tying the release to the facts alleged in the complaint and related to, or arising from, the failure to pay overtime under California law and the FLSA. Settlement Agreement, ¶¶ 100-101.

The release PAGA Recipients for PAGA Recipients is significantly narrower. The PAGA Recipients release only all claims, demands, rights, obligations, liabilities, actions, and causes of action for PAGA penalties under the provisions of law which could have been alleged based on the facts in the operative complaint during the PAGA Period. The release by PAGA Recipients is not a general release

and shall not extend beyond claims under the PAGA. Settlement Agreement, ¶ 102.

Named Plaintiffs/ Class Representatives will provide a general release, including a California Civil Code § 1542 waiver of unknown claims. Settlement Agreement, ¶ 103.

### 6. Timeline

The preliminary schedule for implementation of this settlement is as follows:[6]

| DESCRIPTION | EVENT |
| --- | --- |
| 5 days after preliminary approval of settlement | Defendants to provide Settlement Administrator and Plaintiffs' Counsel a final spreadsheet, which lists each Class Member's first and last name, last known address and phone number, Social Security number or ITIN, the dates of employment and total workweeks.  The version of the spreadsheet provided to Plaintiffs' counsel will include only the last four digits of each Class Member's Social Security number in lieu of the full number. |
| 25 days after preliminary approval of settlement | Plaintiffs to file Motion for Approval of Attorney's Fees and Costs, and Plaintiff Service Awards. |
| 30 days after preliminary approval of settlement | Mailing by first class mail of Class Action Settlement Notice and Estimated Settlement Share Form (collectively "Notice Packet") by Settlement Administrator. |
| No later than 25 days after mailing of Notice Packet | Settlement Administrator to conduct trace/search efforts and send a follow up mailing to Settlement Class Members whose Notice Packet was returned as undeliverable or whose listed address is found to be inaccurate or outdated. |

---

[6] Settlement Agreement, ¶ 104.

| 45 days after mailing of Notice Packet | Last day for Settlement Class Members to opt out, challenge dates of employment, or submit written objections (the "Objection/Exclusion Deadline"). |
|---|---|
| 10 days after the Objection/ Exclusion Deadline | Settlement Administrator to provide counsel with opt outs and challenges received from Settlement Class Members, and also prepare a declaration for Plaintiffs' counsel and Defendant's counsel review and approval certifying the completion and results of the class notice and related processes. |
| 30 days before final approval hearing | Last day for filing and service of papers in support of final settlement approval. Including declaration from Settlement Administrator. |
| Date to be set by Court at Preliminary Approval hearing | Hearing for Final Approval |
| Date Court Grants Final Approval of the Settlement[7] | Settlement Effective Date |
| Within five (5) days of the Settlement Effective Date | Settlement Administrator to make the final calculation of payments from the Net Settlement Fund to be distributed to the Settlement Class Members and provide all Counsel with a report listing the amount of all payments to be made to each Settlement Class Member from the Net Settlement Fund.<br>Plaintiffs to file a Dismissal of the *Muongkhot* Action. |
| Within Ten (10) days of the Settlement Effective Date | Defendant shall deposit the money to fund $286,000 of the GSA and one-half of the employer side taxes with the Settlement Administrator ("Deposit 1") |
| Within One Hundred and Fifty (150) days of the Settlement Effective Date | Defendant shall deposit the money to fund a further $286,000 of the GSA and one-half of the employer side taxes with the Settlement Administrator ("Deposit 2") |

[7] Assumes no objections to the Settlement.

NOTICE OF MOTION AND MEMO IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION AND PAGA SETTLEMENT
Case No. 3:20-CV-01789 BEN MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Within five (5) business days of Deposit 2, above | Settlement Administrator to distribute and pay from the Settlement Fund each of the following: (1) Settlement share checks to all Settlement Class Members and PAGA Recipients; (2) awarded attorney reimbursed litigation expenses to Plaintiffs' counsel; (3) check for the class representatives' service awards; (4) PAGA Penalties to California LWDA, and (5) administration costs paid to the Settlement Administrator. |
| 120 days after distribution of checks to Eligible Settlement Class Members | Expiration / void date for checks distributed to Eligible Settlement Class Members. |
| Within Three Hundred (300) days of the Settlement Effective Date | Defendant shall deposit the money to fund the balance of the GSA - a further $286,000 ("Deposit 3") |
| Within five (5) business days of Deposit 3, above | Settlement Administrator to distribute and pay from the Settlement Fund all awarded attorneys' fees to Plaintiffs' counsel. |
| Within 10 days of final payment of attorney's fees | Class Counsel to submit final Settlement Administrator's report regarding status of payments, and request for distribution of any residual to Court-approved *cy pres* beneficiary. |
| Date to be set by Court at Preliminary Approval | Final Accounting Hearing to be held. Plaintiffs' Counsel will request Court approval of disposition of residual funds from Reserve Fund, including, but not limited to payment to *cy pres* beneficiary, and will submit a declaration in support of their request from the settlement administrator. |
| Within sixty (60) days of Deposit 3 | Settlement Administrator to pay any residual funds in the settlement fund to or the *cy pres* beneficiary. |

| 10 days after payment of residual funds to *cy pres* beneficiary | Class Counsel to file and serve final Settlement Administrator's report regarding all payments and the *cy pres* distribution, if any. |

### 7.  The Proposed Class Notice is the Best Notice Practicable

Under Rule 23(e), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed.R.Civ.P. 23 (e)(1)(B)(2). The notice provided to members of a class certified under Rule 23(b)(3) must be "the best notice that is practicable." Fed.R.Civ. P. 23(c)(2)(B). The notice itself must be clear, concise and state:

(i) The nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The proposed Notice Packet and notice plan satisfy the requirements of Rule 23(c). In addition to including all the categories contemplated in Fed. R. Civ. P. 23(c)(2)(B), the notice contains (1) contact information for class counsel; (2) information on each Settlement Class Member's credited workweeks and corresponding Individual Settlement Payment; (3) instructions on how to dispute credited workweeks; and (4) details for the final approval hearing. Settlement Agreement, Exhs. A and B.

The proposed Notice procedure provides Settlement Class Members with the best notice possible. The parties have agreed, subject to Court approval, that within 21 days after an order granting preliminary approval the Settlement Administrator will mail notice via first class mail and email to the last-known addresses of the

class members as provided by Defendant. The Settlement Administrator will use people-finder software, or equivalent, and skip-trace searches to attempt to locate addresses for undeliverable mail. This method meets the requirements of due process. *Ohayon v. Hertz Corp.,* No. 5:11-cv-01662 EJD, 2012 WL 4936058, at *5-6 (N.D. Cal. Oct. 16, 2012) (Reasonable diligence to obtain addresses for returned mailings met the Rule 23 notice standards).

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: (1) conditionally certify for settlement purposes the Settlement Class and Subclasses; (2) grant preliminary approval of the proposed Settlement; (3) appoint Leonard Carder, LLP as Settlement Class Counsel, (4) appoint Plaintiffs as Class Representatives; (5) appoint Simpluris, Inc. as Settlement Administrator; (6) approve the content and method of distribution of the Notice of Class Settlement and Estimated Share form; and (7) and schedule a hearing regarding final approval of the proposed Settlement, Class Counsels' request for attorneys' fees and costs, and Plaintiffs' service awards.

Dated:  June 4, 2021                **LEONARD CARDER, LLP**


By:   */s/ David Pogrel*
David Pogrel, Esq.
*Attorneys for Plaintiffs and the Putative Class*