UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LOPEZ YANEZ; KAYASONE MUONGKHOT; and JULIO RUBIO, *on behalf of themselves and all others similarly situated*, | Case No.:  20cv1789-MDD |
| Plaintiffs, | **ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION AND PRIVATE ATTORNEYS' GENERAL ACT SETTLEMENT** |
| v. | |
| HL WELDING, INC., | |
| Defendant. | [ECF No. 23] |

Before the Court is Plaintiffs' Motion for Preliminary Approval of Class Action, Fair Labor Standards Act ("FLSA") Collective Action, and Private Attorneys' General Act ("PAGA") Settlement.  (ECF No. 23).  The motion is unopposed by Defendant HL Welding, Inc. ("Defendant" or "HL Welding"). (ECF No. 26).  Plaintiffs submitted the Joint Stipulation of Class Action and Collective Action Settlement and Release ("Settlement Agreement") to the Court for review.  Having considered the briefs, Settlement Agreement, and the relevant statutory and case law, the Court **GRANTS** Plaintiffs' Motion.

# I.  INTRODUCTION

On June 2, 2021, Plaintiffs filed a First Amended Complaint ("FAC"),

which is the operative complaint in this case.  (ECF No. 19).  Plaintiffs allege: (1) failure to pay overtime wages under California Labor Code §§ 510, 1194; (2) failure to furnish accurate wage statements under California Labor Code §§ 226, 226.3; (3) waiting time penalties under California Labor Code §§ 201-2032; (4) unfair competition under California Business and Professions Code § 17200, *et seq.*; (5) civil penalties under PAGA, California Labor Code § 2698, *et seq.*; and (6) failure to pay overtime wages under FLSA, 29 U.S.C. § 207. (*Id.*).

The gravamen of Plaintiffs' complaint in this action and the Muongkhot Action is that Defendant "has used a pay scheme to deprive Tradespeople of wages by paying a '*per diem*' in addition to hourly wages, but not including the *per diem* rate in its calculation of overtime pay."  (*Id.*).  As such, Defendant has allegedly not paid overtime using the proper regular rate of pay as required by the FLSA and California law.  (*Id.*).  Additionally, Plaintiffs allege derivative claims that Defendant failed to provide accurate wage statements, "and that certain Tradespeople . . . are due waiting time and PAGA penalties."  (*Id.*).

Plaintiffs seek preliminary approval of an $858,000 non-reversionary settlement with HL Welding to settle the California and federal overtime pay, and related claims on behalf of a class of Tradespeople ("Settlement Class Members"), as defined more specifically below. The Court preliminarily finds the proposed settlement is fair, reasonable and adequate.

## II.   BACKGROUND

### Litigation History

On October 10, 2019, Plaintiff Muongkhot filed a class action complaint against HL Welding in San Diego Superior Court ("*Muongkhot* Action"). The initial complaint was filed on behalf of a putative class of Welders, Ship

Fitters, and other similarly situated employees employed in California on or after October 10, 2015. Shortly after filing, Defendant disclosed that many members of the putative class signed arbitration agreements with HL Welding that included a class action waiver.

On February 13, 2020, Plaintiff Julio Rubio initiated the 65-day administrative exhaustion requirements with the California Labor and Workforce Development Agency ("LWDA") that were required before Mr. Rubio could join the *Muongkhot* Action as a representative plaintiff to assert a claim under PAGA. Plaintiffs then filed an amended complaint in the *Muongkhot* Action wherein Rubio is named as a plaintiff and proxy for the state of California.

In July 2020, following initial discovery and meeting and conferring with Defendant's counsel, Plaintiff sought a stipulation to amend the operative complaint in the *Muongkhot* Action. Defendant declined to stipulate, requiring Plaintiffs to file a Motion for Leave to Amend in the *Muongkhot* Action to add additional plaintiffs and provide an expanded class definition explicitly including all potential class positions in addition to Welders and Shipfitters.

On September 11, 2021, Plaintiff Yanez initiated this action. (ECF No. 1). Plaintiffs filed the First Amended Complaint on June 2, 2021, which added included claims on behalf of an expanded statewide class, a nationwide collective action, and penalties under PAGA. (ECF No. 19).

The parties attended a mediation on March 24, 2021 with mediator Scott Markus. The mediation involved discussion of settlement of both this Action and the *Muongkhot* Action. The parties entered into a signed Memorandum of Understanding ("MOU") to settle all of the class and PAGA claims in both cases. Prior to mediation, Defendant HL Welding shared with

Plaintiffs' counsel detailed data regarding the class claims.  HL Welding provided supplemental data to Plaintiffs' counsel on June 2, 2021 that confirmed the relevant workweeks and pay periods that are the focus of the disputes herein, and which also confirmed when class members worked overtime hours that would be subject to additional compensation if Plaintiffs prevailed on the merits.  The parties spent the next two months negotiating the terms of the full settlement agreement presented in the instant motion, including the Settlement Notice to the class.

**Settlement Agreement**

In return for a release of all claims in this action, the *Muongkhot* Action, and any related claims arising from the same facts averred in the operative complaint, Defendant agreed to create a non-reversionary $858,000 Gross Settlement Amount ("GSA").  Defendant will separately pay the "employer's share" of employment taxes (FICA, FUTA, SDI) on any payments classified as W-2 income or wages, over and above the GSA.  (ECF No. 23 at 14). Plaintiffs request, and Defendant consents, that the fund be distributed as follows:

(1)     Up to $12,000 for Settlement Administration costs payable to Simpluris, Inc.

(2)     Up to one third (1/3) of the GSA or $286,000 for reasonable attorneys' fees.

(3)     Up to $10,000 to reimburse Class Counsel for actual documented litigation expenses.

(4)     Class representative service awards not to exceed $15,000 paid to Plaintiffs Lopez Yanez, Kayasone Muongkhot and Julio Rubio ($5,000 each) for their services to the class and risks incurred.

(5)     $100,000 for payment of PAGA penalties, with 75% of this

payment, or $75,000, sent to the LWDA and 25% of this payment, or $25,000, distributed to "PAGA Recipients," as defined by the Settlement Agreement.

After these deductions, the remaining sum, or Net Settlement Amount, would be distributed to Class members on a pro-rata basis (based on workweeks in the applicable statutory periods).  (ECF No. 23 at 16).  Plaintiffs' counsel estimates the Net Settlement Amount to be $435,000.  (*Id.*).

Settlement Class Members will not be required to file claims in order to receive their share of the Net Settlement Fund, but will have the opportunity to correct any errors in Defendant's records to their numbers of weeks worked as Tradespeople in California.  (*Id.*).

**Class and Subclass Definitions**

The proposed Settlement Class and Subclass definitions are as follows:

"Settlement Class" and "Settlement Class Members" shall mean all current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers (collectively "Tradespeople") at any time from October 1, 2015 and June 30, 2021 and who have not signed arbitration agreements with class/collective action waivers with HL Welding and who fall within one of the following two subclasses:

California Subclass: All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in California at any time between October 1, 2015 and June 30, 2021 (the "California Subclass Period") and who have not signed arbitration agreements with class/collective action waivers with HL Welding.

FLSA Subclass:  All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in states other than California at any time between September 15, 2017 and June 30, 2021 (the "FLSA Subclass Period") and who have not signed arbitration agreements with class/collective action waivers with HL Welding.

The proposed class and subclass definitions are different from the definitions in the operative complaint in the following respects: the revised definitions (1) finalize the Class Period end date of June 30, 2021, (2) create two subclasses, and (3) clarify that only Tradespeople who did not sign arbitration agreements are included in the class settlement and subject to the class release.  That is, any HL Welding employee who signed an arbitration agreement retains his/her right to bring an individual arbitration for the overtime and related claims at issue in this litigation.

**Class Representative and Class Counsel**

In certifying the settlement class, Plaintiffs request the Court appoint Plaintiffs Lopez Yanez, Kayasone Muongkhot and Julio Rubio as the class representatives and their counsel, David Pogrel and Aaron Kaufmann, Leonard Carder, LLP, as class counsel.

**Notice Procedure**

The parties agreed on Simpluris, Inc. as the Settlement Administrator. After updating the database provided by Defendant through the National Change of Address database, the Settlement Administrator will mail the Settlement Notice and Estimated Share Form (collectively "Notice Packet") to each class member. The Notice Packet shall inform Settlement Class Members of what their estimated settlement amount is, as well as the number of Settlement Class Members credited workweeks during the

relevant period covered by the settlement. The Settlement Notice will inform the Class Members that they have four options: (1) do nothing and receive the estimated amount set forth in the Notice; (2) dispute the amount listed in the Notice; (3) object to the Settlement; or (4) exclude himself or herself from the Settlement. Because this is not a claims-made settlement, Class Members will not be required to make a submission to participate in the settlement.

## III.   DISCUSSION

Plaintiffs' motion seeks preliminary approval of a class action settlement, an FLSA collective action settlement, and a PAGA settlement. The Court addresses each in turn.

## A.   Certification of the Class for Purposes of Settlement

Federal Rule of Civil Procedure 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3), common questions must predominate over individual questions and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  At the preliminary approval stage, the court determines whether it "will *likely* be able to . . . certify the class for purposes of judgment on the proposal" for class settlement.  Fed. R. Civ. P. 23(e)(1)(B) (emphasis added).

### 1.   *Numerosity*

The numerosity requirement under Rule 23(a)(1) is met if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members and will find that it has not been satisfied when the class comprises 21 or fewer."  *Celano v. Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).  The parties have identified 75

California Subclass Members.  (SA ¶ 4(a)); (ECF No. 23 at 14).  Joinder of this number of plaintiffs is impractical.  The numerosity requirement is satisfied.

### 2. *Commonality*

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P 23(a)(2).  Commonality is established if plaintiffs' and class members' claims "depend upon a common contention . . . capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  Plaintiffs' complaint alleges questions common to the entire class for all claims, including whether: "(1) class members have been subject to the same 'per diem' payment plan; (2) class members are entitled to overtime protections of the California Labor Code and FLSA; (3) HL Welding has violated its legal obligations under various provisions of the California Labor Code and FLSA; and (4) HL Welding's actions constitute violations of the Unfair Competition Law."  (ECF No. 23 at 21).  As such, the proposed class meets the commonality requirement.

### 3. *Typicality*

Rule 23(a)(3)'s typicality requirement will be satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The named plaintiff must be a member of the class they seek to represent and must "possess the same interest and suffer the same injury" as putative class members.  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotation marks omitted).  The representative claims are typical if they are "'reasonably co-extensive with those of absent class members," though they "need not be substantially

20cv1789-MDD

identical.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). "Plaintiffs' claims arise out of the same factual and legal circumstances as the claims of other Class members: like all Class Members, Plaintiffs were subject to HL Welding's 'per diem' compensation and have been underpaid according to the California and federal overtime laws and did not receive accurate wage statements." (ECF No. 23 at 21). Additionally, "Class Members no longer providing services to HL Welding, like Plaintiffs, are entitled to waiting time penalties and other penalties." (*Id.*). The Court finds that Plaintiffs have satisfied the typicality requirement.

*4. Adequacy*

Under Rule 23(a)(4), representative parties must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In analyzing whether Rule 23(a)4) has been met, the Court must ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (internal quotation marks and citation omitted). The adequacy of representation requirement is designed to deny certification in instances of "actual fraud, overreaching, or collusion." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (internal quotation marks and citation omitted).

There is no reason to believe that the Class Representatives or Class Counsel have any conflicts of interest with the proposed Settlement Class Members. There also is no reason to believe that the Class Representatives or Class Counsel have failed to vigorously investigate and litigate this case. Plaintiffs have retained competent counsel, who have "actively identified,

investigated and prosecuted the claims that are the subject of this Settlement; they have decades of extensive experience in class action litigation, including wage-and-hour claims of the type asserted here, have been appointed class counsel in numerous other cases; and have demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation." (ECF No. 23 at 22). Accordingly, the Class Representatives and Class Counsel adequately represent the proposed Settlement Class Members.

### 5. *Predominance and Superiority*

Finally, to certify a class under Rule 23(b)(3), the Court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks and citation omitted). For settlement purposes, a class settlement is superior to other available methods for a fair resolution of the controversy because the class mechanism will reduce litigation costs and promote greater efficiency. In a class action settlement, the Court need not address whether the case, if tried, would present issues of mangeability under Rule 23(b)(3)(D). *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

In this case, liability hinges on whether Defendant subjected Class Members to the same "per diem" payment plan, whether Class Members are entitled to overtime protections, whether Defendant violated its legal obligations under California's Labor Code and FLSA, and whether Defendant's conduct violates the Unfair Competition Law. (*See* ECF No. 23

at 21).  As a result, Plaintiffs and the Class members share several common questions of fact and law that are central to Plaintiffs' alleged injuries and that predominate over individualized issues.

If the Settlement Class Members' claims were treated on an individual basis, rather than a class basis, several cases would be filed and each would result in a similar outcome.  Further, the individual cases would consume a significant amount of the Court's and parties' resources.  Also, it is likely that the Settlement Class Members would not pursue litigation on an individual basis due to the high cost of pursing their individual claims.  Thus, a class action is the superior vehicle to adjudicate the dispute.

### 6.   Conclusion

For the reasons stated above, the Court conditionally certifies the class for settlement purposes only.

## B.   Certification of the FLSA Collective Action

Plaintiffs also request that this matter be certified as a collective action under the FLSA.  (SA ¶ 55).  Under the FLSA, an employee may bring a collective action on behalf of other similarly situated employees.  *See* 29 U.S.C. § 216(b).  Thus, a district court's approval of preliminary certification of an FLSA collective action is "conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)."  *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109 (9th Cir. 2018).  A party plaintiff and putative collective members are "similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims."  *Id.* at 1117.

"The limited statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under

Rule 23, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden." *Id.* at 1112 (internal quotation marks and citations omitted).  The Court's "level of consideration is lenient" and focuses on whether the pleadings establish a "reasonable basis" for determining that the putative members are similarly situated.  *Id.* at 1109.  "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members."  *Id.*

Plaintiffs make a plausible showing that Plaintiff Lopez Yanez is "similarly situated" to the putative collective members.  Plaintiffs allege all Tradespeople who worked for Defendant performed substantially similar duties as Welders, Ship Fitters, Pipe Fitters, Sheet Metal Workers, Electricians, Machinists, Riggers, and other similar positions in skilled trades.  (FAC ¶ 14).  Plaintiff Lopez Yanez and the putative collective action members are similarly situated because Defendant excluded the *per diem* from the calculation of overtime compensation for both Plaintiff Lopez Yanez and the putative collective action members.  (*Id.* ¶ 15).  Because it is plausible that there are "similar issue[s] of law or fact material to the disposition" of the FLSA claim, the Court grants conditional certification of the FLSA collective action.

## C.   Fair, Reasonable, and Adequate Settlement

Federal Rule of Civil Procedure 23(e)(2) requires that any settlement in a class action be approved by the court which must find that the settlement is fair, reasonable, and adequate.   Fed. R. Civ. P. 23(e)(2).  At the preliminary approval stage the court determines whether the settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of

possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

Similarly, a collective action under the FLSA may not be settled without supervision of either the Secretary of Labor or a district court. *Kerzich v. Cty. of Tuolumne*, 335 F. Supp. 3d 1179, 1183 (E.D. Cal. 2018). Courts often apply the Rule 23 factors used in determining the fairness of a proposed class action settlement when evaluating the fairness of an FLSA settlement, although it is recognized that some of those factors do not apply due to the inherent differences between class actions and FLSA actions. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1172 (S.D. Cal. 2016).

### 1.    *Product of Serious, Informed, Non-Collusive Negotiations*

"The first factor concerns the means by which the parties arrived at settlement." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019) (quotation marks and citation omitted).  The court must be satisfied that the parties "engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of settlement." *Acosta v. TransUnion, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007) (internal quotation marks and citation omitted).

Counsel engaged in "thorough negotiations," "substantial informal discovery and data exchange," and Plaintiffs' counsel "interviewed a number of . . . affected employees." (ECF No. 23 at 24).  For example, Defendant "provided a large volume of damages data and Plaintiffs' counsel conducted [a] thorough review and analysis of the data and estimate potential damages incurred by the Settlement Class." (*Id.*).  Additionally, the parties engaged in private mediation with an experienced mediator.  (*Id.*).  A settlement "was reached only after a mediator's proposal was issued at the conclusion of a full

20cv1789-MDD

day of mediation." (*Id.*).  Following the mediation, Defendant provided additional data.  (*See id.*).

"The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiffs were 'armed with sufficient information about the case' to broker a fair settlement."  *Uschold*, 333 F.R.D. at 170 (quoting *Acosta*, 243 F.R.D. at 396).  The parties have been engaging in informal discovery and settlement negotiations since October 2019.  (ECF No. 23 at 9).  In light of these factors, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations.

### 2.   Obvious Deficiencies

"The Court must next consider whether there are obvious deficiencies in the Settlement Agreement."  *Uschold*, 333 F.R.D. at 170 (internal quotation marks and citation omitted).  The Court has reviewed the proposed Settlement Agreement and does not note any obvious deficiencies.

### 3.   Lack of Preferential Treatment

Next, the Court considers whether the Settlement Agreement provides preferential treatment to any class member.  Under the Settlement Agreement, each class member and collective action member may claim their pro rata share of the Net Settlement Amount based on the number of workweeks worked during the class periods.  (SA ¶ 68).  The PAGA recipients will receive a pro rata share of the PAGA Settlement Amount based on the number of pay periods each PAGA recipient worked during the PAGA Period. (SA ¶ 6).  The Settlement Agreement further provides that the named Plaintiffs will each receive a $5,000 service award.  (SA ¶ 58).

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  Incentive awards "are intended to compensate class representatives for work done on behalf of the

class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Id.* at 958-59.  Excessive incentive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted).

Plaintiffs explain the service awards are justified because the named Plaintiffs took risks in this action, spent time and effort "assisting in the investigation and consulting with counsel regarding all aspects of the litigation and settlement," and have "broader" releases than those of other Class Members.  (ECF No. 23 at 15).  Although Plaintiffs submit no declarations or other evidence attesting to the quality or scope of the named Plaintiffs' representative service, the amount requested is comparable to amounts awarded by courts in this Circuit.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 incentive awards to each of the 24 named plaintiffs).

Accordingly, at this stage, there is no indication that the service award constitutes "preferential treatment" that would defeat preliminary approval. The motion for final approval must include evidence to support the requested awards.

### 4.   *Range of Possible Approval*

To determine whether the Settlement Agreement "falls within the range of possible approval," the Court focuses on "substantive fairness and

adequacy" and "consider[s] [P]laintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp.2 d at 1080. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

The Settlement Agreement provides for a recovery for the class of $858,000, less settlement administration costs, attorneys' fees and expenses, Plaintiffs' service awards, and the PAGA settlement. This represents an adequate recovery for the class, in light of the risk, expense, complexity, and likely duration of further litigation. Under the allocation formula proposed by the parties, Class Members would receive full recovery for their overtime claims, including interest and liquidated damages. Plaintiffs' counsel declares that the average payout for the California Subclass and FLSA Subclass is $4,400 per employee and the average payout for each PAGA Recipient is $49. (Pogrel Decl. ¶¶ 42-43).

Plaintiffs also identify certain risks that they may face in further litigation. Defendant HL Welding has at all times maintained that under its written per diem pay policies, per diem payments to class members represented non-taxable reimbursement for travel expenses on which overtime premiums are not required under either California law or the FLSA. HL Welding also contends that many Tradespeople signed enforceable arbitration agreements. HL Welding contends such arguments would defeat class certification and also go to the merits of Plaintiffs' claims. While Plaintiffs believe they can defeat these defenses, there remains a risk that a jury could agree with Defendant or that the Court could decline to certify the class. As such, continued litigation presents risks that Plaintiffs may receive

less or no recovery than provided in the Settlement Agreement.

The risks and costs of continued litigation at least balance the benefit of the estimated payout to class members, warranting preliminary approval and comment from the class members.  The proposed Settlement Agreement appears fair, adequate, reasonable, and in the best interests of the class members given the uncertainty of continued litigation.

Plaintiffs indicate that Settlement Class Members will receive a "pro rata" portion of the Net Settlement Amount and elsewhere indicate the Settlement Class Members will receive "full recovery."  Plaintiffs are **ORDERED** to clarify in their motion for final approval whether Settlement Class Members will receive a "pro rata" portion of the Net Settlement Amount, "full recovery" of their individual claims, or whether the "pro rata" portion will exceed individual's full recoveries.

## D.  Class Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Such notice must clearly state: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires; (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3).  *Id.*  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., LLC v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)

1    (internal quotation marks and citation omitted).

2    The Notice Packet attached as exhibit B to the Settlement Agreement
3    meets the requirements of Rule 23(c)(2)(B).  The notice describes the
4    allegations and claims in plain language, defines class members, includes
5    contact information for Plaintiffs' counsel and the Settlement Administrator,
6    and summarizes the settlement amount and its distribution.  (SA, Exhibit A).
7    The Notice Packet also contains an estimate of each member's settlement
8    amount.  (SA, Exhibit B).  The notice further describes the options available
9    to class members, including instructions for opting out of the settlement and
10   filing an objection.  (SA, Exhibit A).  It also informs class members that
11   receiving a settlement award will release certain claims against certain
12   parties.  (*Id.*)  The notice informs class members that they may appear at the
13   final fairness hearing.  (*Id.*).  Finally, it directs class members, collective
14   action members, and PAGA Recipients to a website with more information,
15   including the Settlement Agreement.  (*Id.*).

16   The notice plan itself is also adequate.  Within five business days of
17   preliminary approval Defendant will provide the Settlement Administrator
18   with Settlement Class Members' and PAGA Recipients' social security
19   numbers or ITIN, last known addresses and telephone numbers, and dates
20   worked as Settlement Class Member and pay periods as a PAGA Recipient.
21   (SA ¶ 81).  The Settlement Administrator must then update the addresses
22   using the results of the National Change of Address database.  (SA ¶ 82).
23   The Settlement Administrator must mail the Notice Packet to the Settlement
24   Class Members and PAGA Recipients within 30 days of preliminary approval.
25   (ECF No. 23 at 29).  If any notices are returned to the Settlement
26   Administrator with a forwarding address, the Settlement Administrator will
27   re-mail the Notice Packet to that address.  (SA ¶ 83).  If any notices are

returned without a forwarding address, the Settlement Administrator will perform a standard skip trace to attempt to identify a valid address and re-mail the Notice.  (*Id.*).  Settlement Class Members have 45 days from the mailing of the Notice Packet to either opt-out, challenge dates of employment, or submit written objections.  (ECF No. 23 at 30).

## E.   Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth Headset Prods. Litig.*, 654 F.3d at 941.  Where a settlement produces a common fund for the benefit of the entire class, courts may employ either the lodestar method or the percentage-of-the-fund method to determine the reasonableness of the fee request.  *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).  When applying the percentage-of-the-fund method, an attorneys' fees award of "twenty-five percent is the 'benchmark' that district courts should award."  *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  A district court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate."  *Id.*

The Settlement Agreement provides for a maximum award of $286,000 in attorneys' fees (one-third of the Gross Settlement Amount).  (SA ¶ 62).  Defendant does not oppose the award.  Plaintiffs' counsel asserts that the motion for attorneys' fees and costs will be supported with argument and evidence.  (ECF No. 23 at 15).

1    Without Class Counsel's briefing, the Court finds no reason to award
2    fees that exceed the Ninth Circuit's 25% benchmark.  Class Counsel will need
3    to show what special circumstances exist warranting a higher percentage in
4    their motion for attorneys' fees and costs.

5    Plaintiffs' Counsel also request litigation costs.  "There is no doubt that
6    an attorney who has created a common fund for the benefit of the class is
7    entitled to reimbursement of reasonable litigation expenses from that fund."
8    *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation
9    marks and citation omitted).  To that end, district courts in this Circuit
10   regularly award litigation costs and expenses in wage-and-hour class actions.
11   The Settlement Agreement provides that Plaintiffs' counsel may obtain up to
12   $10,000.  (SA ¶ 62).  Counsel is instructed to submit an itemized sheet
13   summarizing costs with its motion for attorneys' fees so that the Court can
14   determine the reasonableness of the costs and expenses incurred for the
15   benefit of the class.

16   **F.    PAGA Claims**

17   The Settlement Agreement also provides for PAGA penalties.  (*See*
18   *generally*, SA).  Accordingly, the Court must take into account special
19   considerations of that statute to determine whether preliminary approval of
20   the settlement is appropriate with respect to those claims.

21   Under PAGA, an "aggrieved employee" may bring an action for civil
22   penalties for labor code violations on behalf of himself and other current or
23   former employees.  Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA
24   "does so as the proxy or agent of the state's labor law enforcement agencies."
25   *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009).  A PAGA plaintiff has "the
26   same legal right and interest as state labor law enforcement agencies" and
27   the action "functions as a substitute for an action brought by the government

itself." *Id.* "[A] judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.* A plaintiff bringing a PAGA action owes a duty to their "fellow aggrieved workers" and "to the public at large." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).

Civil penalties collected pursuant to PAGA are distributed between the aggrieved employees (25%) and the LWDA (75%). Cal. Lab. Code § 2699(i). Any settlement of PAGA claims must be approved by the Court. Cal. Lab. Code § 2699(l)(2). The proposed settlement must also be sent to the agency at the same time that it is submitted to the court. *Id.*

There are "'fundamental[]' differences between PAGA actions and class actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (quoting *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014)). One of those differences is that "class certification is not required to pursue a PAGA representative claim." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019).

However, the California legislature, California Supreme Court, California Courts of Appeal, and LWDA have not set a standard for approving PAGA settlements. *Id.* The LWDA has only stated that it is important that "the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (quoting LWDA Response at 2-3). Based on the LWDA's Response, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is

fundamentally fair, reasonable, and adequate.  *Haralson*, 383 F. Supp. 3d at 972.

Under PAGA, "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation," except for provisions in which a penalty is specifically provided.  Cal. Lab. Code § 2699(f)(2).  A court may "award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code § 2699(e)(2).

The Settlement Agreement provides that a copy of the Settlement Agreement will be sent to the LWDA at the time it is submitted to the Court. (SA ¶ 63).  With this procedural requirement presumably satisfied, the Court next discusses whether the Settlement Agreement's $100,000 allocation to PAGA penalties is likely to be found fair, reasonable, and adequate.

Plaintiffs calculated the maximum PAGA penalties for the PAGA Period to be $443,000 for the overtime wage claims, calculated based on the initial violation rates because Defendant may not be subject to the heightened rates for the subsequent violations.  (Pogrel Decl., ¶ 38). Plaintiffs explain that any penalties under PAGA would depend on whether the PAGA Recipients' arbitration agreements would foreclose participation in a PAGA action in court and whether the trier of fact in a bench trial would reduce PAGA damages.  (*Id.*).  Additionally, Defendant "never agreed that Plaintiffs' damages calculations were accurate or reliable.  On the contrary, Defendant always contended . . . that Class Members estimates of their overtime hours were unreliable and exaggerated."  (Pogrel Decl. ¶ 39).

"[I]n actions involving wage and hour class claims and PAGA claims that settle, parties often minimize the total amount of the settlement that is paid to PAGA penalties in order to maximize payments to class members." *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC, 2020 U.S. Dist. LEXIS 220685, at *26 (E.D. Cal. Nov. 24, 2020).  The public policies underlying PAGA are also likely met here because the settlement more broadly provides a "robust" remedy for possible violations of the California Labor Code and the FLSA.  (*See* Pogrel Decl. ¶ 45) ("[T]he $435,000 fund that will be paid to California Subclass and FLSA Subclass members upon final approval of this settlement is more than 100% of Class Counsel's best estimate of the full value of the potential recovery for the California Subclass and FLSA Subclass members if they had worked overtime every week they were employed by HL Welding during the relevant periods."); *see O'Connor*, 201 F. Supp. 3d at 1134 ("[I]f the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.").

Although the Settlement Agreement's $100,000 allocation to PAGA penalties amounts to roughly 22% of the maximum PAGA penalties, the Court preliminarily finds that the settlement for the Rule 23 class and FLSA collective action is robust enough to fulfill PAGA's purposes.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion (ECF No. 23) and the proposed settlement is preliminarily approved.  **IT IS HEREBY ORDERED** that:

1.   Simpluris, Inc. is appointed as Settlement Administrator.

2.   Notice of the proposed settlement, and the rights of Settlement Class Members, including the right to opt out of the settlement, shall be given by mailing of the Notice of Class Action and PAGA Settlement by first

class, postage prepaid, to all Settlement Class Members and PAGA Recipients pursuant to the applicable provisions in the Stipulation. HL Welding shall provide the Settlement Administrator with the information necessary to conduct this mailing as set forth in the Stipulation;

3.     A hearing shall be held before this Court on **<u>December 15, 2021 at 1:30 p.m.</u>** in Courtroom 3B to consider whether the settlement should be given final approval by the Court:

(a)     Written objections by Settlement Class Members to the proposed settlement will be considered if delivered on or before the Notice Response Deadline;

(b)     At the Final Approval Hearing, Settlement Class Members may be heard orally in support of or in opposition to the settlement;

(c)     Class Counsel and counsel for HL Welding should be prepared at the hearing to respond to objections filed by Settlement Class Members, and to provide other information as appropriate, bearing on whether or not the settlement should be approved;

(d)     At the Final Approval Hearing, the Court shall consider any motions or applications for attorney fees, costs and litigation expenses, and incentive payment to the Class Representatives, consistent with the Settlement Agreement, and any such motions shall be filed with the Court no less than 30 days before the Notice Response Deadline; and

(e)     At the Final Approval Hearing, the Court shall consider any motions for approval of the PAGA settlement, which must be filed with the Court no less than 30 days before the Notice Response Deadline.

4.     In the event that the Effective Date occurs, all Settlement Class Members will be deemed to have forever released and discharged the Released Claims.  In the event that the Effective Date does not occur for any

reason whatsoever, the Stipulation shall be deemed null and void and shall have no effect whatsoever.

5. The Court **ORDERS** the following schedule for further proceedings:

| DEADLINE | EVENT |
|---|---|
| 5 days after preliminary approval of settlement | Defendants to provide Settlement Administrator and Plaintiffs' Counsel a final spreadsheet, which lists each Class Member's first and last name, last known address and phone number, Social Security number or ITIN, the dates of employment and total workweeks.  The version of the spreadsheet provided to Plaintiffs' counsel will include only the last four digits of each Class Member's Social Security number in lieu of the full number. |
| 30 days before Final Approval Hearing | Plaintiffs to file Motion for Approval of Attorney's Fees and Costs, and Plaintiff Service Awards. |
| 30 days after preliminary approval of settlement | Mailing by first class mail of Class Action Settlement Notice and Estimated Settlement Share Form (collectively "Notice Packet") by Settlement Administrator. |

| No later than 25 days after mailing of Notice Packet | Settlement Administrator to conduct trace/search efforts and send a follow up mailing to Settlement Class Members whose Notice Packet was returned as undeliverable or whose listed address is found to be inaccurate or outdated. |
|---|---|
| 45 days after mailing of Notice Packet | Last day for Settlement Class Members to opt out, challenge dates of employment, or submit written objections (the "Objection/Exclusion Deadline"). |
| 10 days after the Objection/ Exclusion Deadline | Settlement Administrator to provide counsel with opt outs and challenges received from Settlement Class Members, and also prepare a declaration for Plaintiffs' counsel and Defendant's counsel review and approval certifying the completion and results of the class notice and related processes. |

| 30 days before final approval hearing | Last day for filing and service of papers in support of final settlement approval of Class Settlement and approval of PAGA Settlement. Including declaration from Settlement Administrator. |
|---|---|
| December 15, 2021 at 1:30 PM in Courtroom 3B of the Schwartz Courthouse | Hearing for Final Approval and Approval of PAGA Settlement |
| Date Court Grants Final Approval of the Settlement[1] | Settlement Effective Date |
| Within five (5) days of the Settlement Effective Date | Settlement Administrator to make the final calculation of payments from the Net Settlement Fund to be distributed to the Settlement Class Members and provide all Counsel with a report listing the amount of all payments to be made to each Settlement Class Member from the Net Settlement Fund.<br><br>Plaintiffs to file a Dismissal of the *Muongkhot* Action. |

---

[1] Assumes no objections to the Settlement.

| Within Ten (10) days of the Settlement Effective Date | Defendant shall deposit the money to fund $286,000 of the GSA and one-half of the employer side taxes with the Settlement Administrator ("Deposit 1") |
|---|---|
| Within One Hundred and Fifty (150) days of the Settlement Effective Date | Defendant shall deposit the money to fund a further $286,000 of the GSA and one-half of the employer side taxes with the Settlement Administrator ("Deposit 2") |
| Within five (5) business days of Deposit 2, above | Settlement Administrator to distribute and pay from the Settlement Fund each of the following: (1) Settlement share checks to all Settlement Class Members and PAGA Recipients; (2) awarded attorney reimbursed litigation expenses to Plaintiffs' counsel; (3) check for the class representatives' service awards; (4) PAGA Penalties to California LWDA, and (5) administration costs paid to the Settlement Administrator. |

| | |
|---|---|
| 120 days after distribution of checks to Eligible Settlement Class Members | Expiration / void date for checks distributed to Eligible Settlement Class Members. |
| Within Three Hundred (300) days of the Settlement Effective Date | Defendant shall deposit the money to fund the balance of the GSA - a further $286,000 ("Deposit 3") |
| Within five (5) business days of Deposit 3, above | Settlement Administrator to distribute and pay from the Settlement Fund all awarded attorneys' fees to Plaintiffs' counsel. |
| Within 10 days of final payment of attorney's fees | Class Counsel to submit final Settlement Administrator's report regarding status of payments, and request for distribution of any residual to Court-approved *cy pres* beneficiary. |
| Within 5 days of ruling on a motion for distribution of any residual funds to Court-approved *cy pres* beneficiary | Settlement Administrator to pay any residual funds in the settlement fund to or the *cy pres* beneficiary. |
| 10 days after payment of residual funds to *cy pres* beneficiary | Class Counsel to file and serve final Settlement Administrator's report regarding all payments and the *cy pres* distribution, if any. |

5.      Pending further order of the Court, all proceedings in this matter

except those contemplated herein and in the Settlement Agreement are stayed.

6.     The Court expressly reserves the right to adjourn or continue the Final Approval Hearing without further notice to the Class.

**IT IS SO ORDERED**.

Dated:   July 20, 2021

Hon. Mitchell D. Dembin
United States Magistrate Judge

20cv1789-MDD