Aaron Kaufmann, State Bar No. 148580
David Pogrel, State Bar No. 203787
Amanda Eaton, State Bar No. 341987
LEONARD CARDER, LLP
1999 Harrison Street, Suite 2700
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile:  (510) 272-0174
akaufmann@leonardcarder.com
dpogrel@leonardcarder.com
aeaton@leonardcarder.com

Attorneys for Plaintiffs and the Settlement Class

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LOPEZ YANEZ, KAYASONE MUONGKHOT and JULIO RUBIO on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>HL WELDING, INC.,<br><br>        Defendant. | Case No.  **3:20-CV-01789 BEN MDD**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Hrg Date:    March 15, 2022<br>Time:          1:30 p.m.<br>Location:    Courtroom 3B<br>Judge:      Hon. Mitchell D. Dembin |

1

# **TABLE OF CONTENTS**

I.     INTRODUCTION ..................................................................................... 2

II.    CASE BACKGROUND.............................................................................. 3

    A.    Plaintiffs' Factual Allegations ..................................................... 3

    B.    Procedural Background ................................................................. 4

        1.    Litigation Through Preliminary Approval.................................... 4

        2.    Settlement Administration Since Preliminary Approval.............. 6

    C.    The Settlement Provides Counsel's Best Estimate Of Full Value
        For The Class And Substantial Penalties To The State ..................... 7

III.   ARGUMENT AND STANDARDS FOR FINAL APPROVAL....................... 8

    A.    The Settlement Meets The Criteria For Final Approval ........................ 8

        1.    The Settlement Is Entitled To A Presumption Of Fairness ........... 8

            a.    The Settlement Was Reached Through Arm's-
               Length Negotiations .......................................................... 9

            b.    Substantial Investigation Has Been Completed ................ 9

            c.    Class Counsel Is Experienced And Endorses The
               Settlement .......................................................................... 9

            d.    There Are No Objections Or Opts Outs To The
               Settlement ........................................................................ 10

            e.    The Risk And Expense Of Further Litigation .................. 10

            f.    The Amount Offered In Settlement.................................. 12

    B.    Confirmation Of The Court's Provisional Class Certification Is
        Appropriate ........................................................................................ 12

    C.    The Court-Ordered Notice Program Is Constitutionally Sound ........... 14

    D.    Settlement Of The PAGA Claim Warrants Approval .......................... 15

    E.    The Requested Attorneys Fee And Expenses Award Is
        Reasonable ......................................................................................... 17

        1.    Awarding Fees As Percentage Of The Common Fund Is
            Appropriate Here ............................................................................ 18

        2.    The Fees Requested Are Reasonable Considering The
            Value Of The Settlement ................................................................ 20

i

1

**TABLE OF CONTENTS (cont'd)**

2

3. A Lodestar Crosscheck Further Supports The Fees

3  Requested................................................................................23

4  a. Class Counsel's Lodestar Is Supported By Billing

5  Records...................................................................24

   b. The Proposed Multiplier is Negative ...............................24

6

7  4. Class Counsels' Litigation Expenses Should Be

   Reimbursed ........................................................................25

8  F. The Requested Class Representative Service Awards are Well

9  Deserved................................................................................25

10 IV. CONCLUSION ...................................................................................29

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## <u>FEDERAL AND UNPUBLISHED CASES</u>

*Alvarez v. Farmers Insurance Exchange,*
2017 WL 2214585 (N.D. Cal 2017)............................................25, 28

*Barbosa v. Cargill Meat Solutions Corp.,*
297 F.R.D. 431 (E.D. Cal. July 2, 2013)...............................................20

*Bernal v. Davita, Inc.,*
No. 5:12-cv-03255-PSG (N.D. Cal. 2014).............................................20

*Blum v. Stenson,*
465 U.S. 886 (1984)................................................................................17

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980).........................................................................18, 19

*Boyd v. Bechtel Corp.,*
485 F.Supp. 610 (N.D. Cal. 1979).................................................9, 10

*Burns v. Elrod,*
757 F.2d 151 (7th Cir. 1985).................................................................14

*Chambers v. Whirlpool Corp.,*
214 F.Supp.3d 877 (C.D. Cal. 2016), *judgment entered,* No. SACV 111733
FMO (MLGx), 2016 WL 5921765 (C.D. Cal. Oct. 11, 2016)........................28

*Chu v. Wells Fargo Investments, LLC,*
No. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 ...............17

*Churchill Vill., L.L.C.,*
361 F.3d at 575.......................................................................................14

*Clarke v. AMN Services,*
987 F.3d 848 (9th Cir. Feb. 8, 2021)...................................................22

*Class Plaintiffs v. Seattle,*
955 F.2d 1268 (9th Cir. 1992)...................................................................8

*Eisen v. Carlisle & Jacquelin,*
417 U.S. 156 (1974)...............................................................................14

*Elliott v. Rolling Frito-Lay Sales, LP,*
No. SACV 11-01730 DOC, 2014 WL 2761316 (C.D. Cal. 2014) .................22

*Ellis v. Naval Air Rework Facility,*
87 F.R.D. 15 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981)..........9, 10

*Fisher Bros. v. Cambridge-Lee Industries, Inc.,*
630 F.Supp. 482 (E.D. Pa. 1985) .......................................................9-10

iii

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS

### <u>FEDERAL AND UNPUBLISHED CASES (cont'd)</u>

*Garcia v. Gordon Trucking*,
   No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) . 17

*Garner v. State Farm Mut. Auto. Ins.*,
   No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. 2010) ..........26-27

*Glass v. UBS Fin. Serv., Inc.*,
   2007 WL 221862 (N.D. Cal. 2007)...................................................................23

*Gomez v. H & R Gunland Ranches, Inc.*,
   No. CV F 10-1163 LJO MJS, 2011 WL 5884224 (E.D. Cal. 2011)...............23

*Graham v. Overland Solutions, Inc.*,
   No. 10–CV–0672, 2012 WL 4009547 (S.D. Cal. 2012)................................28

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)..........................................................8, 13, 17, 18

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................................17

*In re Activision Sec. Litig.*,
   723 F.Supp. 1373 (ND. Cal. 1989) ...............................................................23

*In re Bluetooth Headset Prod. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011)..........................................................................18

*In re Continental Ill. Sec. Litig.*,
   962 F.2d 566 (7th Cir. 1992)..........................................................................19

*In re Crazy Eddie Sec. Litig.*,
   824 F.Supp. 320 (E.D.N.Y. 1993)..................................................................23

*In re FPI/Agretech Securities Litig.*,
   105 F.3d 469 (9th Cir.1997)...........................................................................18

*In re Heritage Bond Litigation*,
   2005 WL 1594403 .........................................................................................8

*In re Med. X-Ray Film Antitrust Litig.*,
   1998 U.S. Dist. LEXIS 14888 (E.D.N.Y. 1998)............................................23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)..........................................................................21

*In re Pacific. Enterprises Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995)........................................................................21, 23

*In re Warner Communications Sec. Litig.*,
   618 F.Supp. 735 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986)...............9

*Joel A. v. Giuliani*,
   218 F.3d 132 (2d Cir. 2000) ...........................................................................8

## FEDERAL AND UNPUBLISHED CASES (cont'd)

*LaBrie v. UPS Supply Chain Solutions, Inc.*,
No. 4:08-cv-03182 PJH ......................................................................28

*Linney v. Cellular Alaska P'ship*,
1997 WL 450064 (N.D. Cal. 1997)....................................................23

*Lusby v. GameStop Inc.*,
No. C12-03783 HRL, 2015 WL 1501095 (N.D. Cal. 2015)............................21

*Ochoa-Hernandez v. Cjaders Foods, Inc.*
(N.D. Cal., Apr. 2, 2010, No. C 08-2073 MHP) 2010 WL 1340777...............15

*Officers for Justice v. Civil Service Com.*,
688 F.2d 615 (9th Cir. 1982)...........................................................8, 10

*Radcliffe v. Experian Info. Solutions Inc.*,
715 F.3d 1157 (9th Cir. 2013)...........................................................27

*Rigo v. Kason Industries, Inc.*,
2013 WL 3761400 (S.D. Cal., 2013) ...............................................20-21

*Rodriguez v. West Publishing Corp.*,
563 F.3d 948 (9th Cir. 2009)............................................................25

*Singer v. Becton Dickinson & Co.*,
2010 U.S. Dist. LEXIS 53416 (S.D. Cal. 2010) ...................................20

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir.2003) ...................................................18, 25, 28

*Stuart v. Radioshack Corp.*,
2010 U.S. Dist. LEXIS 92067 (N.D. Cal. 2010)................................20, 23

*Swedish Hosp. Corp. v. Shalala*,
1 F.3d 1261 (D.C. Cir. 1993) ........................................................19, 20

*Torres v. Pick-A-Part Auto Wrecking*,
No. 116-CV-01915 DAD (BAM), 2018 WL 306287 (E.D. Cal. 2018) .........28

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993)...............................................................15

*Vasquez v. Coast Valley Roofing, Inc.*,
266 F.R.D. 482 (E.D. Cal. 2010)....................................................20, 23

*Viceral v. Mistras Group, Inc.*,
No. 15-cv-02198-EMC, 2017 WL 661352 (N.D. Cal. 2017) .....................21

*Viking River Cruises, Inc. v. Moriana*
S. Ct. Dkt No, 20-1573 (cert. granted December 15, 2021) .......................16

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (2002) ..................................................................20, 23

## FEDERAL AND UNPUBLISHED CASES (cont'd)

*Wannemacher v. Carrington Mortg. Servs., LLC,*
No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. 2014)........28

*Wellens v. Sankyo,*
No. C 13-00581 WHO (DMR), 2016 WL 8115715 (N.D. Cal. 2016) ...........28

*Whitaker v. Space Exploration Technologies Corp.,*
No. BC578922 (Cal. Sup. Ct., June 14, 2017), 2017 WL 2628405.................17


## STATE CASES

*Arias v. Superior Court*
46 Cal. 4th 969 (2009)...........................................................................15

*Dunk v. Ford Motor Company,*
48 Cal.App.4th 1794 (1996)................................................................8, 10

*Franco v. Athens Disposal Co., Inc.*
171 Cal.App.4th 1277 (2009)....................................................................15

*Iskanian v. CLS Transportation Los Angeles, LLC*
59 Cal. 4th 348 (2014)..............................................................................15

*Ketchum v. Moses,*
24 Cal. 4th 112 (2001)..............................................................................24

*Lafitte v. Robert Half Int'l, Inc.,*
1 Cal. 5th 480 (2016)................................................................................23

*Lealao v. Beneficial California,*
82 Cal.App.4th 19 (2000)....................................................................19, 24

*Melendres v. City of Los Angeles,*
45 Cal.App.3d 270 (1975).........................................................................19

*Nordstrom Com. Cases,*
186 Cal. App. 4th 576 (2010)....................................................................17

*Serrano v. Priest (Serrano III),*
20 Cal. 3d 25 (1977)............................................................................18-19

*Woodland Hills Residents Assn., Inc. v. City Council,*
23 Cal. 3d 917 (1979)...............................................................................19


## STATUTES

Cal. Civil Code
§ 340 ........................................................................................................16
Cal. Lab. Code
§ 2699 ...........................................................................................6, 15, 16

PLAINTIFFS' NOTICE OF MOTION AND MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF
MOTION FOR ATTORNEYS' FEES AND EXPENSES AND CLASS REPRESENTATIVE SERVICE AWARDS

**STATUTES (cont'd)**

Fed. R. Civ. Proc.
   23 ................................................................................13, 14, 15

**OTHER AUTHORITIES**

4 Conte & Newberg, *Newberg on Class Actions*
   § 14:6 (4th Ed. 2002).............................................................21
Manual for Complex Litig. (4th),
   § 21.312 ...............................................................................15

**NOTICE OF MOTION AND MOTION**

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

    **PLEASE TAKE NOTICE** that on March 15, 2022 at 1:30 p.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Mitchell Dembin in Courtroom 3B, located on the 11th Floor of the United States District Court for the Southern District of California, at 333 West Broadway San Diego, California, Plaintiffs will and hereby do move the court for final approval of the proposed class action settlement. Specifically, Plaintiffs respectfully request that the Court (1) grant final approval for the proposed class action settlement adjudging the terms of the settlement to be fair reasonable and adequate and directing that its terms and provisions be carried out; and (2) approve the settlement administrator's payment; (3) approve the payment of a class representative service awards to the named plaintiffs; and (4) approve payment of class counsels' fees and expenses. This motion is based on the following Memorandum of Points and Authorities, the supporting Declaration of David Pogrel, the supporting Declaration of Meagan Brunner, the supporting Declarations of Luis Lopez Yanez, Kayasone Muongkhot and Julio Rubio, and all other pleadings and papers on file in this action, and such argument as the Court may hear.

DATED:  February 14, 2021        Respectfully submitted,

                            **LEONARD CARDER, LLP**

                            By: *  /s/ David Pogrel        *
                                David Pogrel

                            *Attorneys for Plaintiffs and the Settlement Class*

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Plaintiffs seek final approval of this $858,000 settlement ("Settlement") with Defendant HL Welding, Inc. ("Defendant" or "HL Welding"). The Settlement will dispose of this case and a related state court case, both of which arose out of HL Welding's policy of not paying overtime premiums to Tradespeople for a payment that the company classified as a "per diem." The Settlement also resolves related claims under the California Private Attorneys General Act ("PAGA").

On July 20, 2021, the Court granted preliminary approval of this settlement. Dkt. No. 27. The Court's Order appointed Simpluris, Inc. ("Simpluris") as the Settlement Administrator and approved the Notice and accompanying Settlement Share Form (collectively "Notice packet"); *Id.* Simpluris mailed the Notice packets to all putative members of the conditionally certified class, albeit following some delays caused by Defendant's failure to initially provide the necessary data. The notice provided class members with description of the case and other important information about the calculation of their awards, how to opt out or object, and how to obtain further information on Plaintiffs' requests for attorneys' fees and service awards.

Class Members had until January 24, 2022 to object, opt-out, or challenge their award, and no Class Member has objected or opted-out of the settlement. Declaration of Meagan Brunner Regarding Notice and Settlement Administration ("Simpluris Decl."), filed herewith, ¶¶ 9 - 11. Class Members can expect to receive payouts (net of fees, costs, PAGA payment to the State, and class representative service awards) that average approximately $5,450, with the highest payout over $19,500 and 21 Class Members each receiving over $10,000. Simpluris Decl., ¶ 15.[1]

This motion further seeks final approval of Plaintiffs' requests for an attorneys'

---

[1] A subset of workers who signed arbitration agreements will receive a smaller payment only for potential PAGA claims, with a very limited release that allows them to pursue their ow claims in arbitration if they elect to do so.

fee award of $286,000, reimbursement of litigation expenses of $10,000, and class representative service awards of $5,000 for Plaintiffs Yanez, Muongkhot and Rubio.

Plaintiffs submit that their fee request is well justified given the time, effort and risk incurred by class counsel. Counsel have demonstrated an unwavering commitment to their clients and the class here, rejecting Defendant's early attempts to settle for a more limited group of workers, bringing law and motion required to advance the claims, and ultimately filing a second lawsuit in order to assure that they could represent all the workers who would be due relief in a court action, in addition to the state of California. At all times counsel continued with their class certification discovery and spent significant time in contact with the class to buttress their prosecution. While the one-third fee request is above the Ninth Circuit's benchmark, it is well supported by counsel's lodestar (with negative multiplier), and also by the remarkable payout that will flow to the workers after the payment of fees, which significantly exceeds the *full-value* of the class' unpaid overtime wages.

The requested class representative service awards are also well-deserved. Plaintiffs' declarations in support of this motion show their commitment of time, sacrifice, and service on behalf of the class. Each plaintiff played a unique and important role in bringing the meaningful recovery to the class, none of which would have been possible but for their initiative, courage and efforts.

## II.    CASE BACKGROUND

### A.    Plaintiffs' Factual Allegations

HL Welding is a staffing agency that provides workers to maritime construction contractors for work building marine vessels. Its primary operations are in San Diego.

Plaintiffs here challenge HL Welding's common policy of compensating Tradespeople[2] with a *per diem* rate, in addition to their hourly rate of pay. HL Welding

---

[2] The Tradespeople who most commonly work for HL Welding are Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers.

never considered the *per diem* payment in calculating the "regular rate of pay," and thus did not pay overtime premiums on this portion of any Tradespersons' wages. HL Welding has justified its non-payment of overtime by claiming that the *per diem* was paid as a non-taxed "reimbursement" for travel expenses paid to employees who reside outside the local work area.

**B.    Procedural Background**

**1.  Litigation through Preliminary Approval**

On October 10, 2019, Plaintiff Muongkhot filed a complaint against HL Welding in San Diego Superior Court ("*Muongkhot* Action"). See Declaration of David Pogrel in Support of Plaintiffs' Motion for Final Approval ("Pogrel Decl."), ¶ 14. The initial complaint was filed only on behalf of a putative class of Welders and Ship Fitters employed in California on or after October 10, 2015. Muongkhot's case was also limited to a claim under California's Unfair Competition Law because Mr. Muongkhot's other claims were time-barred. *Id,* ¶14. On February 10, 2020, Plaintiff Julio Rubio retained Plaintiffs' counsel with the intention of being a Plaintiff in the *Muongkhot* Action to assert additional claims. *Id,* ¶¶ 16-19.

In February 2020, following initial discovery, Defendant first contacted Plaintiffs to propose mediation. Pogrel Decl., ¶ 17. Defendant further revealed that many members of the putative class had signed arbitration agreements with HL Welding that included a class action waiver. *Id.* In late February 2020, Defendant produced a signed arbitration agreement for proposed Plaintiff Rubio that Plaintiffs' counsel determined would likely preclude him from serving as a class representative, but he could serve as a representative plaintiff for a claim under the California Private Attorneys General Act ("PAGA"). *Id.,* ¶19. Rubio initiated and completed the administrative exhaustion requirements to bring the PAGA claim. *Id.*

During the March to July 2020 period, the Parties continued to explore mediation and negotiate related informal discovery. Pogrel Decl., ¶¶ 20-22. The negotiations included Plaintiffs seeking the contact information and data for the class and other

information counsel believed was relevant to become informed about HL Welding's potential defenses and exposure in the *Muongkhot* Action. *Id.* In June 2020, Defendant's counsel informed Plaintiffs' counsel that Defendant would only consider mediation of claims by Tradespeople who the company claimed had not signed arbitration agreements. *Id., ¶* 22. Defendant also refused to sign a tolling agreement that would provide only limited information for negotiations. *Id.* As a result, Plaintiffs decided to forgo mediation and continue the litigation. *Id.*

Litigation of the *Muongkhot* Action during mid 2020 was complicated extensively by COVID-19. Pogrel Decl., ¶ 20. Plaintiffs' counsel continued its investigation during this period and was retained by additional employees seeking to join the *Muongkhot* Action. *Id.* Plaintiffs filed a Motion for Leave to Amend to add these Plaintiffs, which could not be heard until October 23, 2020. *Id., ¶* 23.

On September 11, 2020, Plaintiff Yanez filed the instant action to encompass employees and claims beyond the *Muongkhot* Action, including claims under the federal Fair Labor Standards Act ("FLSA") for non-California employees. Pogrel Decl., ¶ 24. This filing was necessary because of the extended schedule in the state court in the *Muongkhot* Action, and due to the addition of non-California FLSA claims over which this Court has subject matter jurisdiction. *Id.* Plaintiffs' counsel also prepared a motion for collective action notice, to file quickly in order the preserve the statute of limitations for employees seeking to assert FLSA claims. *Id., ¶* 25.

In October 2020, Defendant again proposed that the parties engage in mediation following an adverse tentative ruling in the *Muongkhot* Action, with negotiations expanded to cover employees with claims under PAGA[3] and non-California employees with FLSA claims who did not sign arbitration agreements. Pogrel Decl., ¶¶ 27-30. The parties reached agreement on the parameters of mediation[4] and selected mediator Scott

---

[3] Including those who signed arbitration agreements.

[4] The mediation would focus on: (1) a California subclass who did not sign arbitration agreements and worked on or after October 15, 2019 ("California subclass"); (2) an

Markus. *Id.* ¶ 28. Due to scheduling conflicts, the mediation was scheduled for March 24, 2021. *Id.* The Parties and counsel then prepared for and participated in a day of mediation, agreeing to a settlement in principle. Pogrel Decl, ¶ 32. Further negotiations followed and were resolved in June 2021, resulting in a settlement agreement. *Id.*

The parties stipulated to Magistrate Judge jurisdiction to facilitate earlier approval of the settlement (Dkt. No. 2), and Plaintiffs' counsel prepared their motion for preliminary approval. Pogrel Decl, ¶ 33. On June 8, 2021, Plaintiffs' counsel also submitted the settlement and a copy of the preliminary approval motion to the LWDA, as required by Labor Code § 2699(l)(2). *Id.*, ¶ 34. The court granted the preliminary motion without a hearing on July 20, 2021. (Dkt. No. 27.).

### 2. Settlement Administration Since Preliminary Approval

Plaintiffs' counsel engaged Simpluris to implement the Court's preliminary approval order. Pogrel Decl, ¶¶ 36-37. This process was more complex than usual, and required significant follow up by class counsel, because Defendant failed to comply with several early deadlines. *Id.,* ¶ 37; Simpluris Decl., ¶3. These disputes were ultimately resolved only after class counsel put Defendant on notice that they would seek sanctions for its omissions. Defendant claimed it needed more time for collection of the records and a hearing on Plaintiffs' final approval motion. Pogrel Decl, ¶¶ 37 (j)-(r); see also Dkt. No 28. The Court then reset the final approval hearing for March 15, 2022. Dkt. No 29.

Simpluris mailed the settlement notice to the class on December 9, 2021,  which included and opt out/objection deadline of January 24, 2022 and notice to the class that the motion for fees and service awards would be filed by December 17, 2021 and

---

FLSA collective who did not sign arbitration agreements and worked on or after September 15, 2017 ("FLSA subclass"); and (3) a PAGA representative group who have worked on or after February 13, 2019, irrespective of whether or not they signed an arbitration agreement ("PAGA Recipients"). Categories (2) and (3), above, are in addition to the employees for whom Defendant agreed to negotiate a potential settlement in June 2020. Pogrel Decl., ¶ 28.

available for them to review.[5] Simpluris Decl., ¶ 5. Simpluris set up a toll-free number and telephone support for Class Member inquiries. *Id.,* ¶ 7. No Class Member submitted an objection or opted out as of the January 24, 2022 deadline. *Id.,* ¶ 10-11.

The Settlement Administrator has received one timely challenge and one untimely challenge. Simpluris Decl., ¶ 9 Both challenges were reviewed by Plaintiffs' and Defendant's counsel and were rejected. *Id.,* ¶ 9.

**C.    The Settlement Provides Counsel's Best Estimate of Full Value for the Class and Substantial Penalties to the State**

The settlement reached here is particularly noteworthy because it provides more than full value of counsel's best estimate of the overtime pay owed to the class, in addition to a substantial payment to the state of California and PAGA Recipients to resolve the PAGA claims. If the court grants Plaintiffs' request for attorney's fees/costs and service awards, approximately $436,000 will be payable to the 80 employees who will receive payment from the class settlement.[6] Simpluris Decl., ¶¶ 12-13. The workers in the California and FLSA subclasses will receive approximately $226.97 for each week worked during the liability period. Id., ¶ 14. This is equivalent to almost 24 hours per week, paid at the overtime premium rate of $9.50 per hour. Based on class counsel's best estimate – that Tradespeople typically worked 7.5 overtime and double time hours per week - the pro rata payouts represent more than *triple* the full value for these claims, so each class member also received significant relief for interest, penalties and the derivative claims. *See* Declaration of David Pogrel in Support of Plaintiffs'

---

[5] Class counsel filed this motion on December 16, 2021 based on its understanding of counsel's obligations under the settlement and Ninth Circuit authority, but the court rejected the filing. Dkt. No. 31.

[6] 23 California-Only Class Members, 34 California Class Members/ PAGA recipients, 17 California and FLSA Class Members, and 6 FLSA only Class Members. Simpluris Decl., ¶ 13. The payment to the 477 PAGA Recipients is in addition to this amount, and allocated differently due to the limited relief available for PAGA claims, a tailored release, and court's discretion to reduce such penalties.

Motion for Preliminary Approval ("Pogrel Prelim. App. Dec.") (Dkt. No. 23-1), ¶¶ 38-42.

The California LWDA will receive a further $75,000 from the settlement, representing 75% of the $100,000[7] allocation for PAGA penalties. The PAGA allocation is significant here, representing 11.7% of the total settlement.

## III.    ARGUMENT AND STANDARDS FOR FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive Court approval. The Court has broad discretion to grant such approval and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

### A.    The Settlement Meets the Criteria for Final Approval

#### 1.  The Settlement is Entitled to a Presumption of Fairness

A class action settlement is entitled to a presumption of fairness when: (1) the settlement is reached through arm's-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and, (4) the percentage of objectors is small. *Dunk v. Ford Motor Company,* 48 Cal.App.4th 1794, 1802 (1996) quoting *Officers for Justice v. Civil Service Com.,* 688 F.2d 615, 625 (9th Cir. 1982).

---

[7] The remaining $25,000 is allocated to the affected employees with valid PAGA claims ("PAGA Recipients"), in exchange for a *limited* release of only PAGA penalty claims; any worker who signed an arbitration agreement and is thus collecting only the PAGA payment retains all his/her rights to initiate a private arbitration to recover unpaid overtime pay and related remedies.

### a. The Settlement was Reached through Arm's-Length Negotiations

This settlement was the result of March to June 2021 mediation and settlement negotiations facilitated by Mr. Markus, an experienced employment class action mediator. Prior to that mediation, Defendant produced extensive class data regarding its Tradespeople and their *per diem* payments. Class counsel analyzed that data and developed a model for HL Welding's potential exposure on the subject claims. Class counsel had thus completed their due diligence and was well informed prior to entering into the subject Settlement. *See* Pogrel Prelim. App. Dec. (Dkt. No. 23-1), ¶¶ 36-38.

### b. Substantial Investigation Has Been Completed

The stage of the proceedings and the amount of investigation completed is an important factor that the courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *In re Warner Communications Sec. Litig.,* 618 F.Supp. 735, 741 (S.D.N.Y. 1985) aff'd, 798 F.2d 35 (2d Cir. 1986); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18 (N.D. Cal. 1980) aff'd., 661 F. 2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 616-17 (N.D. Cal. 1979). Here, Plaintiffs conducted their investigation as outlined in the Motion for Preliminary Approval including, but not limited to, thorough written discovery; the exchange of hundreds of pages of documents; interviews with Plaintiffs and class members; informal discovery as to class data and company policies; analysis of Defendant's data and mediation preparation. *See* Pogrel Prelim. App. Dec. (Dkt. No. 23-1), ¶¶ 19, 22, 27, 32, 36-38.

### c. Class Counsel is Experienced and Endorses the Settlement

As detailed in the Motion for Preliminary Approval, experienced counsel operating at arm's-length has weighed all of the risk factors and endorses the proposed settlement. The view of the attorneys actively conducting the litigation is "entitled to significant weight." *Fisher Bros. v. Cambridge-Lee Industries, Inc.*, 630 F.Supp. 482,

9

488 (E.D. Pa. 1985); *see also*, *Ellis*, 87 F.R.D. at 18; *Boyd,* 485 F.Supp. at 616-17. *See* Pogrel Prelim. App. Dec. (Dkt. No. 23-1), ¶¶ 45-47.

Class Counsel have extensive wage and hour class action experience. *Pogrel Decl.,* ¶¶ 1-12. Thus, Counsel is experienced and qualified to evaluate the class claims and viability of the defenses. Counsel are satisfied that the recovery for each Class Member is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery, the stage of the litigation when the settlement was reached, risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each Class Member's claim to the amounts received. This settlement is fair, adequate and reasonable and in the best interests of the Class.

**d.  There Are No Objections or Opts Outs to the Settlement**

Perhaps the most significant endorsement for the proposed settlement in this case is the fact that *not one* Class Member has objected to any aspect of the proposed settlement. The final factor in *Dunk* is that the percentage of objectors is small. Here, there are no objections. In addition, no class member opted out of the settlement in response to the settlement notice. The absence of any objection or opt outs to the Settlement is a very strong indicator that the Class Members view the Settlement as fair, adequate and reasonable.

**e.  The Risk and Expense of Further Litigation**

At the final approval hearing the Court may consider other relevant factors, such as the strength of the plaintiffs' case, the risk, expenses, complexity and likely duration of further litigation, the risk of maintaining class action status through trial, the amount offered in settlement, the extent of discovery completed and the stage of the proceedings, the experience and views of counsel, the presence of a governmental participant and the reaction of the Class Members to the proposed settlement. *Officers for Justice,* 688 F.2d at 624. "This list is not exhaustive and should be tailored to each case. Due regard should be given to what is otherwise a private consensual agreement between the parties." *Dunk*, 48 Cal.App.4th at 1801.

The risks, complexity, and expenses of this action and the expected duration of this litigation all weigh in favor of final approval. Should litigation continue, Plaintiffs would have to win condition certification of the FLSA claims, Rule 23 certification the state law claims, and then prevail on summary judgment and/or at trial. Defendant would like also file a motion for decertification of any class, and Plaintiffs' success would also be subject to appeal.

Class Certification:  HL Welding would have opposed Plaintiffs' motion to conditionally certify the FLSA collective action and Plaintiffs' motion to certify the Rule 23 class, arguing that individual issues would predominate should this case proceed to trial. Specifically, HL Welding would assert that its *per diem* pay policy is lawful travel reimbursement can only be determined through an individualized fact-intensive inquiry. That is, it would argue that the class lacked commonality for many reasons, including: (1) the job position and skills of the employees are different; (2) different HL Welding locations have different polices; (3) employees' residences and their relation to individual worksites vary; (4) some Tradespeople signed arbitration agreements; and (5) some putative Class Members did not work any overtime. HL Welding would make these arguments, among others, to support its opposition to conditional and class certification.

Arbitration:  In support of its opposition to plaintiff motion for class certification, HL Welding would rely in part on the fact that it has executed arbitration agreements with many of the putative Class Members. There remains a risk that some, or all, of the claims of certain Tradespeople could be forced into arbitration.

Liability on Overtime Claims:  Plaintiffs also recognize that there is a risk on the merits of their claims, as there would likely be disputes over several legal and factual issues. For instance, HL Welding contends that its overtime pay practices were at all times lawful and that *per diem* payments did not qualify as compensation on which overtime is due.

Damage Issues:  Even if Plaintiffs are able to establish liability, there are a

11

number of issues that could impact their ability to establish damages on a class-wide basis. For instance, HL Welding would argue that Plaintiffs and Class Members greatly exaggerate the number of overtime hours worked. Establishing the value of this claim on a class-wide basis at different worksites throughout the United States would present issues of proof as well. Thus, there is a risk that any damage award obtained for the Tradespeople would only be a fraction of the potential exposure calculated by counsel.

While Plaintiffs disagree with Defendant's position and believe that the claims would have been successfully tried on a class-wide basis through representative testimony, they nonetheless recognize the significant risks of further litigation.

The out-of-pocket expenses to continue litigating an action on behalf of the class would also have been significant, particular if expert witnesses would be needed on both damages and liability issue. Counsel would incur these costs at the potential risk of recovering nothing for any of them. The costs expended in litigating this case will exceed $12,000. Pogrel Decl., ¶ 42. Significant additional costs would have been incurred through class certification, trial and potential appeals.

### f.  The Amount Offered in Settlement

The gross settlement amount is $858,000. The net settlement amount will be approximatley $436,000, if the Court approves the $100,000 PAGA allocation and grants the motion for class representative award and fees and costs. According to the Settlement Administrator, Class Members can expect to receive on average $5,450 with the highest Class Members receiving over $19,000. As noted above, the settlement provides a total benefit to the class that represents more than triple the core damages that could be recovered at trial on behalf of the class.

### B.  Confirmation of the Court's Provisional Class Certification is Appropriate

Plaintiffs request that the Court confirm its provisional certification order and find that the proposed Settlement Class meets all the requirements under Rule 23.

Specifically, Plaintiffs ask the Court to finally certify the following class and subclasses for settlement purposes:

> "Settlement Class" and "Settlement Class Members" shall mean all current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers at any time from October 1, 2015 and June 30, 2021 and who have not signed arbitration agreement with class/collective action waiver with HL Welding and who fall within one of the following two subclasses:

> <u>California Subclass:</u> All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in California at any time between October 1, 2015 and June 30, 2021 (the "California Subclass Period") and who have not signed arbitration agreement with class/collective action waiver with HL Welding.

> <u>FLSA Subclass:</u>  All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in states other than California at any time between September 15, 2017 and June 30, 2021 (the "FLSA Subclass Period") and who have not signed arbitration agreement with class/collective action waiver with HL Welding.

The provisionally certified class and subclasses satisfies each of the certification requirements that: (1) the individuals in the settlement class are so numerous that joinder would be impracticable; (2) there is a question of law or fact common to the class; (3) the named Plaintiffs' claims are typical of the claims of the absent settlement class members; and (4) Plaintiffs and their counsel will adequately and fairly represent the interests of the absent settlement class members. *Hanlon*, 150 F.3d at 1019; Dkt. No. 47, 6:9-20. In addition, Plaintiffs have established that the Class is maintainable under Fed. R. Civ. Proc. 23(b) (3) because common questions "predominate over any questions affecting only individual members," and class resolution "is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R.

Civ. Pro. 23(b)(3); Dkt. No. 47, 6:21-27. Accordingly, Plaintiffs request that the Court finally certify the class for settlement purposes under Fed. R. Civ. Pro. 23(b)(3).

## C.    The Court-Ordered Notice Program Is Constitutionally Sound

Under Rule 23(e), the Court "must direct notice in a reasonable manner to all Class Members who would be bound by a propos[ed settlement]." FED. R. CIV. P. 23(e)(1). Class Members are entitled to receive "the best notice practicable" under the circumstances. *Burns v. Elrod*, 757 F.2d 151, 154 (7th Cir. 1985). Notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (internal citations omitted). Moreover, notice that is mailed to each member of a class "who can be identified with reasonable effort" constitutes reasonable notice. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). For any certified Rule 23(b)(3) class, the notice must inform Class Members "that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded." FED. R. CIV. P. 23(c)(2)(B).

The notice plan provided for in the Settlement and approved by the Court in its July 20, 2021 Order satisfies the notice standard for all persons who were mailed notice. The Court concluded that the notice "uses language that is concise and easy to understand, and otherwise complies with Rule 23(c)(2)." Dkt. No. 47, 7:13-14. The Notice encouraged Settlement Class Members to contact the Settlement Administrator or Class Counsel with any questions and provided their telephone numbers, mailing addresses, and email contact information. Simpluris Decl., Ex. A.

To ensure that Class Members could make a fully-informed decision whether to object to or opt out of the Settlement, the Notice Package contained an individual statement of the estimated dollar amount of his or her share of the Settlement. Simpluris Decl., Ex. A. The Settlement provided Class Members with 45 days after the Class Notice of Settlement was mailed to object to or opt out of the Settlement.

The parties have now implemented the Notice Plan. The court-appointed Settlement Administrator, Simpluris, received the list of Class Member names and addresses compiled by Select, updated the address list using the National Change of Address system, and mailed the Class Notice by first class mail to all persons for whom addresses were locatable. Accordingly, the Notice and Notice plan fulfilled all requirements of adequate notice and should be duly approved. *See Torrisi v. Tucson Elec. Power Co*., 8 F.3d 1370, 1374-75 (9th Cir. 1993); FED. R. CIV. P. 23(C)(2).

**D.    Settlement of the PAGA Claim Warrants Approval**

The settlement of a PAGA claim requires court approval. Cal. Lab. Code § 2699 (l)(2). The Court also has discretion to award a lesser amount than the maximum civil penalty based on "the facts and circumstances of a particular case," and if awarding a greater amount "would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *Id*. at § 2699 (e). Although PAGA actions may be brought as class actions, a plaintiff may maintain a representative suit under PAGA without satisfying class action requirements. *See Arias v. Superior Court* 46 Cal. 4th 969, 984-87 (2009). A PAGA action is "fundamentally a law enforcement action designed to protect the public and penalize the employer for past illegal conduct." *Franco v. Athens Disposal Co., Inc.* 171 Cal.App.4th 1277, 1300 (2009) (abrogated by *Iskanian v. CLS Transportation Los Angeles, LLC* 59 Cal. 4th 348 (2014) on other grounds). As such, "[u]nlike a class action seeking damages or injunctive relief for injured employees, the purpose of PAGA is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies." *Ochoa-Hernandez v. Cjaders Foods, Inc.* (N.D. Cal., Apr. 2, 2010, No. C 08-2073 MHP) 2010 WL 1340777, at *4.

Here, Plaintiffs' PAGA claim is brought on behalf of the LWDA and Tradespeople who worked in California on or after February 13, 2019, including those who signed arbitration agreements with class action waivers.  Plaintiff Rubio gave written notice to the LWDA by certified mail on February 13, 2020. PAGA claims for

civil penalties are subject to a one-year statute of limitations. Cal. Civil Code § 340 (a). Accordingly, the settlement releases for the PAGA recipients PAGA claims from February 13, 2019 to June 30, 2021, with narrowly tailored release that allow those workers to pursue their other claims in arbitration. The settlement allocates $100,000 to penalties under PAGA, which will be distributed as follows pursuant to Labor Code § 2699 (i): 75% ($75,000) to the LWDA, and 25% ($25,000) to PAGA Recipients, who are the aggrieved employees who worked during the PAGA liability period. Plaintiffs' counsel provided a copy of the proposed settlement to the LWDA concurrently with the filing of their preliminary approval motion, and the LWDA has not objected to the settlement or expressed any opposition. *Id.* at § 2699 (l)(2) ("The proposed settlement shall be submitted to the [LWDA] at the same time that it is submitted to the court.").

Plaintiffs allocated the PAGA portion of the settlement based on the following factors: (1) the PAGA claim was not a significant driving factor in the prosecution or settlement of this Class Action; (2) PAGA Recipients are subject to only to a very narrow release, and (3) the actual value of the PAGA claim is highly uncertain due to the PAGA Recipients' arbitration agreements and the Courts' discretionary authority to award less than full penalties. While Plaintiffs maintain that the arbitration agreements signers still have operative PAGA claims because PAGA claims are brought on behalf of the state, Defendant would argue that almost all of the eligible PAGA Recipients have waived their right to pursue PAGA claims in court.[8]

The distribution of the funds allocated for the PAGA claim will be paid to the PAGA Recipients on a *pro rata* basis.  That is, each PAGA Recipient's share shall be based on the number of pay periods she or he worked during the February 13, 2019 to June 30, 2021, potential PAGA liability period.

Under these circumstances, the allocation of $100,000— 11.65 % of the

---

[8] The United States Supreme Court recently granted on this question in *Viking River Cruises, Inc. v. Moriana*, S. Ct. Dkt No, 20-1573 (cert. granted December 15, 2021), highlighting the risk of proceeding on these claims.

Settlement Fund—to settle Plaintiffs' representative claims under PAGA is fair and adequate in all respects, and is similar—or more than—amounts courts have approved in other cases, while still achieving the LWDA's enforcement objectives under PAGA. *See, e.g.*, *Nordstrom Com. Cases*, 186 Cal.App.4th 576, 589 (2010) (affirming settlement allocating $0 of $6.4 million settlement to PAGA penalties); *Garcia v. Gordon Trucking*, No. 1:10-cv-0324-AWI-SKO, 2012 WL 5364575, at *3 (E.D. Cal. Oct. 31, 2012) (approving PAGA settlement of $10,000 out of $3.7 million common-fund settlement); *Chu v. Wells Fargo Investments, LLC*, No. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645, at *1 (N.D. Cal. Feb. 16, 2011) (approving PAGA settlement of $7,500 to the LWDA out of $6.9 million common-fund settlement). The PAGA settlement should therefore be approved. *See Whitaker v. Space Exploration Technologies Corp.*, No. BC578922 (Cal. Sup. Ct., June 14, 2017), 2017 WL 2628405, at *2 (approving PAGA portion of settlement because plaintiffs met all statutory requirements, among them 75% penalty allocation to LWDA and 25% allocation to allegedly aggrieved employees).

### E.    The Requested Attorneys Fee and Expenses Award is Reasonable

Plaintiffs request an award of $286,000 in attorney's fees for Class Counsel's work in this case, plus reimbursement of $10,000 in litigation expenses. Initially, the fact that the fees and expenses were negotiated as part of the overall settlement of the case, with the assistance of a mediator, weighs in favor of approving the request. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee."); *Blum v. Stenson*, 465 U.S. 886, 902 n.19 (1984) (courts have "a responsibility to encourage agreement" on fees where possible).

In class action settlements, courts may calculate an appropriate award of fees using the "lodestar" method or the "common fund" method, using either one as a cross check on the other. *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of whether a court applies the lodestar or the percentage method, the Ninth Circuit only requires that "fee awards in common fund cases be reasonable under the

circumstances." *Id*. Here, the record shows the request for fees and expenses is manifestly appropriate under both the lodestar and common fund method.

### 1. Awarding fees as percentage of the common fund is appropriate here

Plaintiffs' request for a fee award of $286,000 paid out from the $858,000 non-reversionary settlement is well-justified under the common fund/percentage-of-recovery approach that has been repeatedly approved of by the Ninth Circuit.

A district court has broad discretion in assessing the reasonableness of attorneys' fees. *In re FPI/Agretech Securities Litig.*, 105 F.3d 469, 472 (9th Cir.1997). As the Ninth Circuit has recognized, "in context of a settlement, fees are a subject of compromise . . . And since the proper amount of fees is often open to dispute and the parties are compromising precisely to avoid litigation, the [district] court need not inquire into the reasonableness of the fees at even the high end with precisely the same level of scrutiny as when the fee amount is litigated." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir.2003). Where a settlement produces a common fund for the benefit of the entire class, as is the case here, the court has discretion to award fees using either a "percentage-of-recovery" or a "lodestar" method. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Hanlon v. Chrysler Group*, 150 F.3d 1011, 1029 (9th Cir. 1998). Regardless of which method is employed, the Court here is "obligated to assure itself that the fees awarded in the agreement were not unreasonably high, so as to ensure that the class members' interests were not compromised in favor of those of class counsel." *Staton,* 327 F.3d at 965.

California and federal courts have long recognized that, when counsels' efforts result in the creation of a common fund that benefits a class, counsel have an equitable right to be compensated from that fund as a whole. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund . . . is entitled at a reasonable attorney's fee from the fund as a whole"); *Serrano*

18

*v. Priest (Serrano III)*, 20 Cal. 3d 25, 35 (1977) ("one who expends attorneys' fees in winning a suit which creates a fund from which other derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs") (internal quotation marks omitted). The common fund doctrine recognizes that attorneys should normally be paid by their clients, and unless attorneys' fees are paid out of the common fund, those who benefit from the attorneys' efforts will be unjustly enriched. *Boeing*, 444 U.S. at 478; *Woodland Hills Residents Assn., Inc. v. City Council*, 23 Cal. 3d 917, 943 (1979). Courts therefore exercise their inherent equitable powers to assess attorneys' fees against the entire fund, spreading the cost of those fees among all those who benefit. *Boeing*, 444 U.S. at 478; *Serrano III*, 20 Cal.3d at 35.

Awarding fees as a percentage-of-the-fund in this case is appropriate for several reasons. Clients prosecuting their claims often negotiate a contingency fee arrangement rather than paying their attorneys by the hour. The percentage-of-the-fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g. In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (common fund doctrine gives "the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had it only been feasible"). The percentage approach also incentivizes highly qualified attorneys to bring class actions. *Lealao v. Beneficial California*, 82 Cal.App.4th 19, 47 (2000); *Melendres v. City of Los Angeles*, 45 Cal.App.3d 270, 272-273 (1975) (noting need to encourage attorneys to undertake common fund cases). As the percentage method is "result-oriented rather than process-oriented," it best "approximates the workings of the marketplace" by rewarding counsel for results achieved. *Lealao,* 82 Cal.App.4th at 48; *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) ("a percentage-of-the-fund approach more accurately reflects the economics of litigation practice," which "given the uncertainties and hazards of the litigation, must necessarily be result-oriented")

(citations omitted). Furthermore, awarding fees as a percentage of the fund promotes efficient litigation efforts that serve to maximize the size of recovery rather than counsels' lodestar hours. *Swedish Hosp.*, 1 F.3d at 1269. Accordingly, the Court should assess Counsel's fee request by applying the percentage-of-the-fund method.

### 2.  The Fees Requested Are Reasonable Considering the Value of the Settlement

While the Ninth Circuit uses 25 percent of the fund as the presumptively reasonable "benchmark" for awarding fees, *Bluetooth,* 654 F.3d at 942, it also recognizes that 20 to 33 percent is the "usual range" for common fund fee recoveries. *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1047 (2002). "[The] exact percentage [awarded] varies depending on the facts of the case, and in most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D. Cal. 2010).

Indeed, district courts within this circuit including this Court frequently award attorneys' fees in line with the request being made here particularly, for wage and hour class action settlements and/or when it can be supported by counsel's lodestar or other compelling factors. *See*, *e.g.*, *Stuart v. Radioshack Corp.*, 2010 U.S. Dist. LEXIS 92067 (N.D. Cal. 2010) (awarding one-third of settlement fund in wage and hour class action and noting that "[t]his is well within the range of percentages which courts have upheld as reasonable in other class action lawsuits"); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431 (E.D. Cal. July 2, 2013) (awarding one-third percent in wage and hour class action); *Vasquez*, 266 F.R.D. at 491-92 (awarding one-third percent in wage and hour class action); *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *22-23 (S.D. Cal. 2010) (noting that the amount of one-third of the common fund for a wage and hour class action settlement "falls within the typical range" of fee awards); *Bernal v. Davita, Inc.*, No. 5:12-cv-03255-PSG, *1-2 (N.D. Cal. 2014) (awarding one-third of the settlement fund in wage-and-hour class action); *Rigo*

*v. Kason Industries, Inc.*, 2013 WL 3761400, *7 (S.D. Cal., 2013) (approving 30 percent fee award; noting that "in a study of 287 settlements ranging from less than $1 million to $450 million, "[t]he average attorney's fees percentage is shown as 31.71%, and the median turns out to be one-third."); 4 Conte & Newberg, *Newberg on Class Actions* § 14:6, p. 551 (4th Ed. 2002) ("fee awards in class actions average around one third of recovery"). Such awards have likewise been upheld by the Ninth Circuit. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming one-third of the common fund); *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378-79 (9th Cir. 1995) (affirming one-third of a $12 million common fund).

As courts have observed, other factors should be considered in evaluating the reasonableness of a common fund fee request. *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198-EMC, 2017 WL 661352, *3 (N.D. Cal. 2017). Those factors include: "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases." *Id. quoting Lusby v. GameStop Inc.*, No. C12-03783 HRL, 2015 WL 1501095, *3 (N.D. Cal. 2015). Those factors applied here confirm the reasonableness of the fee request.

The results achieved here afford HL Welding's Tradespeople substantial relief, with each eligible week paying at approximately $227. This payment is equivalent to more than *triple* the full value of their overtime. Counsel submits that this recovery is exemplary for the class and well in excess of more common settlements that typically pay substantially less than even value of the wages owed, and nothing in excess that could represent penalties or interest.

The Court has already noted the risks of litigation disclosed at preliminary approval, including carrying the burden of showing that HL Welding's per diem was a "subterfuge" and not intended to reimburse for travel expenses, as the company claims. (Dkt. 27, 16:17-17:6.). The risks that the court could deny class certification or manageability of the PAGA claims due to the disputed arbitration agreements were

21

ever-present. In addition, the company's financial viability and capacity to litigate these claims and pay a judgment was a significant factor considered by Plaintiffs and counsel. Those risks exist now, as well as when Class Counsel took on the case on a contingency basis. Class counsel took a further risk when they took the case, because at that time the Ninth Circuit was considering the merits of the very question presented here: If, and how, can an employer exclude "per diem" payments from the calculation of overtime pay by classifying the payment a "expense reimbursement" for travel. *Clarke v. AMN Services*, 987 F.3d 848 (9th Cir. Feb. 8, 2021) (Where *per diem* payments function as compensation for work rather than as reimbursement for expenses incurred, the payments must be included in the regular rate of pay when calculating overtime pay.) While *Clarke* was ultimately resolved favorably for the plaintiffs and counsel believe the opinion directly applicable here, HL Welding argues that *Clarke* buttresses its defenses to class certification and the merits due to some different facts at issue here that were not present in *Clarke*. Whatever its application may have been in the future of this case, Class Counsel filed the *Muongkhot* Action this matter 16 months before *Clarke* was decided, just one of the risks they contended with before negotiating this settlement.

Class Counsel employed their years of class action experience to streamline the litigation and optimize the results. In particular, Class Counsel considered several other potential claims, but determined that focusing on the claims for those who did not sign arbitration agreements (and PAGA claim only for those who did) greatly increased the odds of winning class certification and prevailing on the merits.

Plaintiffs retained Class Counsel on a contingency basis, agreeing that attorneys' fees and reimbursement of costs would only be realized if there was recovery. Counsel thus invested hundreds of hours with no guarantee of payment.

Finally, the fee requested and results obtained here compare favorably with other court-approved fee awards. *See, e.g., Elliott v. Rolling Frito-Lay Sales, LP*, No. SACV 11-01730 DOC, 2014 WL 2761316, *10 (C.D. Cal. 2014) (approving 30

percent fee award on $1,600,000 wage and hour class settlement involving 3,500 class members, after less than three years of litigation); *Gomez v. H & R Gunland Ranches, Inc.*, No. CV F 10-1163 LJO MJS, 2011 WL 5884224, *6 (E.D. Cal. 2011) (awarding fees of $425,000 on $915,000 total settlement); *Vasquez*, 266 F.R.D. at 491 (award of fees equal to 33 1/3% of the common fund when net settlement fund of $200,000 to be divided up among 177 class members); *In re Crazy Eddie Sec. Litig.*, 824 F.Supp. 320, 327 (E.D.N.Y. 1993) (awarding 33.8% in fees in a case where counsel recovered 10% of class damages); *In re Med. X-Ray Film Antitrust Litig.*, 1998 U.S. Dist. LEXIS 14888, at *20 (E.D.N.Y. 1998) (awarding 33.3% fee in antitrust action where counsel recovered 17% of damages); *Stuart v. Radioshack Corp.*, *supra,* 2010 WL 3155645 at *5 (33% in wage and hour case); *Glass v. UBS Fin. Serv., Inc.*, 2007 WL 221862 at *4 (N.D. Cal. 2007) (finding settlement of a wage and hour class actions up to 35% of the claimed damages to be reasonable in light of the uncertainties involved in the litigation); *Vasquez, supra,* 266 F.R.D. at 491 (noting that a 33% is within the typical range of acceptable attorney fees in the 9th Circuit); *In Re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming fee award equal to 33% of fund); *Linney v. Cellular Alaska P'ship*, 1997 WL 450064 at *6-7 (N.D. Cal. 1997) (approving a fee of 33% of fund) *In re Activision Sec. Litig.*, 723 F.Supp. 1373, 1375 (ND. Cal. 1989) (32.8% of fund).

### 3. A Lodestar Crosscheck Further Supports the Fees Requested

Class Counsel also submit here a summary of the attorneys' billable hours to allow the Court to conduct a lodestar cross-check of the proposed percentage-based common fund award, and/or examine the proposed fee amount on the basis of the lodestar plus (or minus) adjustments.[9] *Vizcaino*, 290 F.3d at 1050; *Lafitte v. Robert Half Int'l, Inc.*, 1 Cal. 5th 480, 503-506 (2016) (lodestar cross check is permissible to confirm reasonableness of fee request, but not required).

---

[9] Pogrel Decl., ¶¶ 40, 41.

As the California Supreme Court explained in *Ketchum v. Moses*, 24 Cal. 4th 112 (2001), "fee awards should be fully compensatory" and also "adjusted in some manner to reflect the fact that the fair market value of legal services provided on [the fair market value] basis is greater than the equivalent noncontingent hourly rate." *Id.* at 1132-33. Thus, attorneys' fee awards often include significant lodestar enhancements through the application of multipliers. Factors that can justify a multiplier to class counsel include the complexity of issues in a case, the contingent nature of the litigation, and the amount at stake and results obtained by Class Counsel. *See, Lealao*, 82 Cal. App. 4th at 45-46. While Plaintiffs here request fees under the percentage-of-the-fund approach and submit that request is reasonable in this case, Counsel respectfully suggests that all these factors are present here and that a lodestar cross check results in a negative multiplier confirms the reasonableness of the fee requested.

### a.  Class Counsel's Lodestar is Supported by Billing Records

Class Counsel's declaration describes their firm's billing procedures and work performed.[10]  The contemporaneous record summary and declaration of counsel provide ample support for Class Counsel's lodestar. *See Laffitte*, 1 Cal. 5th at 505 ("trial courts conducting lodestar cross-checks have generally not been required to closely scrutinize each claimed attorney-hour, but have instead used information on attorney time spent to 'focus on the general question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys.'").

### b.  The Proposed Multiplier is Negative

Class Counsel worked a total of 615 attorney hours from the inception of this case through December 31, 2021, as detailed in their summary of billable hours. See Pogrel Decl. ¶¶ 42-46. The total value of counsel's time, calculated based on prevailing rates in the local marketplace was $353,426 as of December 31, 2021, and does not

---

[10] Pogrel Decl., ¶ 41 (billing procedures) and ¶¶ 13-40 (summary of work performed). Counsel can be prepared to present full billing records for the Court's review *in camera*, if the Court so requests.

include time required to finalize this motion; travel to, and attend the hearing; and oversee final administration and payment distribution. *Id.* As such, the resulting capped fee request of $286,000 will result in counsel recovering less than 78% of its anticipated $370,000 final lodestar,[11] a negative multiplier for Class Counsel.

### 4. Class Counsels' Litigation Expenses Should Be Reimbursed

Class Counsel request that the Court grant final approval to Class Counsel's request for reimbursement of actual litigation expenses incurred in prosecuting this action, up to a cap of $10,000. Class Counsels' aggregate out-of-pocket expenses total $11,436.49 through December 31, 2021 and will increase to approximately $12,000 with expenses related to preparation, filing and appearing on this motion. See Pogrel Decl. ¶ 42 and Exh. 5. The final amount will thus be above the cap of $10,000, but Counsel limits their reimbursement request to that amount.

### F.    The Requested Class Representative Service Awards are Well Deserved

Service awards for class representatives "are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action and [ ] to recognize their willingness to act as a private attorney general" and "fairly typical in class action cases." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Alvarez v. Farmers Insurance Exchange*, 2017 WL 2214585, *1 (N.D. Cal 2017) (quoting *Rodriguez*). To assess what service award is appropriate, courts balance the "number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Staton,* 327 F.3d at 977. "Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more where . . . the class representative has demonstrated a strong commitment to the class." *Garner v. State Farm Mut. Auto. Ins.*,

---

[11] Pogrel Decl., ¶¶ 46-47.

No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. 2010) (collecting cases).

Here, three of the named plaintiffs ask for class representative service awards of $5,000 each to compensate them for initiating these cases and/or joining as a plaintiff to add value to the case, the time spent assisting with investigating the facts and participating in mediation and settlement efforts, the risk involved in bringing this case as a named plaintiff, the delay resulting from bringing this case on a class rather than an individual basis, and the service rendered to the unnamed class members resulting from the settlement achieved in this case.

Plaintiffs have provided declarations detailing the activities engaged in to benefit the class, and the risks undertook in placing their names on the complaint and in actively participating in assisting in the prosecution of this case. See Declaration of Kayasone Muongkhot in Support of Plaintiffs' Motion for Final Approval ("Muongkhot Decl."); Declaration of Julio Rubio in Support of Plaintiffs' Motion for Final Approval ("Rubio Decl."); Declaration of Julio Rubio in Support of Plaintiffs' Motion for Final Approval ("Rubio Decl."). Each Plaintiff played a key role to ensure this resolution for the class. Mr. Muongkhot initiated the first action, enabling the case to move forward for at least Welders and Ship fitters and tolling the statute of limitations on all claims. See Muongkhot Decl., ¶¶ 4, 10-11. Mr. Rubio's participation was key to add the PAGA claims. See Rubio Decl., ¶¶ 10-12. Mr. Yanez provided valuable assistance even prior to becoming the class representative and then facilitated the filing of this second case and the assurance that all tradespeople who did not sign arbitration agreements could be represented. See Yanez Decl., ¶¶ 10-11.

Plaintiffs devoted between five and 13 hours assisting in the preparation, prosecution and settlement of this case and in service to the class. See Muongkhot Decl., ¶¶ 9-19; Rubio Decl., ¶¶ 9-19; Yanez Decl., ¶¶ 9-18. They provided valuable information to plaintiffs' counsel to challenge HL Welding 's *per diem* policies. At each juncture of the lawsuit, they devoted time and effort. They also participated

26

actively in the settlement process. Their support for the settlement was not contingent upon their receipt of a service award. *Cf.*, *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (unconditional support of the settlement supports service award).

In addition to the time and service provided noted above, plaintiffs undertook significant risk and burden in coming forward and filing the lawsuit on behalf of their fellow HL Welding co-co-workers. Julio Rubio, in particular,was still working for HL Welding when he joined the litigation, and the other two plaintiffs remain employed in the construction industry.  They all took on the risk that other companies would not employ or work with them because of their participation in this action.

Finally, the plaintiffs understood that bringing this case as a class action would result in a delayed recovery, compared with filing an individual claim. Yet they pursued this case as a class action to seek a recovery for their fellow Tradespeople. They thus sacrificed speedy resolution of their own individual claims to serve their compatriots.

In short, not only the time spent and the service rendered to plaintiffs' counsel and the absent class members, but also the risk of stigma and retaliation for filing a federal lawsuit readily available to the public, provide ample justification for the award of $5,000 sought here for each plaintiff. For example, in approving service awards of $25,000 to named plaintiffs in an employment class action, one district court recently explained:

> The proposed class representative enhancements of $25,000 each …do not appear to be the result of collusion. The Court evaluates incentive awards using "relevant factors including the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, the amount of time and effort the plaintiff expended in pursuing the litigation and reasonable fears of workplace retaliation." [Citation.] Here, Plaintiffs request $25,000 each…or their time, effort, risks undertaken for the payment of costs in the event this action had been unsuccessful, stigma upon future

1
2
employment opportunities for having initiated an action against a former employer, and a general release of all claims related to their employment.

3
4
5
6
7
*Graham v. Overland Solutions, Inc.,* No. 10–CV–0672, 2012 WL 4009547, at *8 (S.D. Cal. 2012) (quoting *Staton*, 327 F.3d at 977). This Court has cited these same considerations in approving class representative service awards in employment class actions. *Alvarez,* 2017 WL 2214585, **1-2; *Wellens v. Sankyo*, No. C 13-00581 WHO (DMR), 2016 WL 8115715, at *3 (N.D. Cal. 2016).[12]

8
9
10
11
12
13
14
15
16
17
18
19
Finally, the requested service award is modest in light of both the total value of the settlement and the amounts class members will be receiving under the settlement. The $15,000 requested is approximately 1.7% of the total settlement of $868,000. $5,000 is less than the average payout to the absent class members. The awards are thus a small fraction of the overall settlement and do not result in an extraordinary premium compared to the average class payouts. Measured against the total settlement and average pay out to absent class members, the awards sought here are significantly more modest than the awards this Court and other courts in the Ninth Circuit have approved. *See, e.g., Alvarez,* 2017 WL 2214585, *1 (service award of $10,000 each was "fair and reasonable" where the aggregate amount of the service awards constituted 1.8% of the total settlement and the average payout to class members was $956.18)

20
21
22
23
24
25
26
27
28
---

[12] *See also*, *LaBrie v. UPS Supply Chain Solutions, Inc.*, No. 4:08-cv-03182 PJH, at Dkt. No. 145, ¶5 (approving service awards of $20,000 for each of the five named plaintiffs,); *Torres v. Pick-A-Part Auto Wrecking*, No. 116-CV-01915 DAD (BAM), 2018 WL 306287, at *5 (E.D. Cal. 2018) (enhancement that is "16 times the maximum amount that a class member could expect to receive in this litigation."); *Chambers v. Whirlpool Corp.*, 214 F.Supp.3d 877, 905 (C.D. Cal. 2016), *judgment entered,* No. SACV 111733 FMO (MLGx), 2016 WL 5921765 (C.D. Cal. Oct. 11, 2016) (awarding enhancement approximately 20 to 13.33 times greater than average class member monetary recovery); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. 2014) (awarding enhancement 7.7 times greater than average class member recovery).

In sum, the requested payments to the three named plaintiffs is appropriate and justified in light of their services to, and risks taken on behalf of, the class.

## IV.    CONCLUSION

The proposed settlement is fair, adequate, and reasonable, as it represents a reasoned compromise reached through arms-length negotiations and considers the risks, complexity, and expense of further litigation. Based thereon, Plaintiffs request that the proposed settlement of the Class and PAGA claims be approved.

DATED:  February 14, 2022          Respectfully submitted,

**LEONARD CARDER, LLP**


By:   */s/ David Pogrel*
          David Pogrel

*Attorneys for Plaintiffs*
*and the Settlement Class*