UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LOPEZ YANEZ; KAYASONE MUONGKHOT; and JULIO RUBIO, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>HL WELDING, INC.,<br><br>Defendant. | Case No.:  20cv1789-MDD<br><br>**ORDER GRANTING UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION, FLSA COLLECTIVE ACTION, AND PRIVATE ATTORNEYS' GENERAL ACT SETTLEMENT**<br><br>[ECF No. 32] |

Before the Court is Plaintiffs Luis Lopez Yanez, Kayasone Muongkhot, and Julio Rubio's motion for final approval of a class and collective action and Private Attorneys' General Act ("PAGA") settlement.  (ECF Nos. 32, 34).  Plaintiffs also seek approval of an award for attorney's fees, costs, and class representative service awards.  (ECF No. 34[1]).  The motion is unopposed.  (*See* Docket).  The Court held a hearing on March 15, 2022.  (*See* ECF No.

---

[1] Plaintiffs filed the motion initially at ECF No. 32, but later filed a notice of errata with a corrected motion at ECF No. 34.  (ECF No. 34).  The Court refers to ECF No. 34 for the memorandum of points and authorities and ECF No. 32 for the attached exhibits.

41).  For the reasons stated below, the Court **GRANTS** Plaintiff's unopposed motion.

# I.   <u>INTRODUCTION</u>

On June 2, 2021, Plaintiffs filed a First Amended Complaint ("FAC"), which is the operative complaint in this case.  (ECF No. 19).  Plaintiffs allege: (1) failure to pay overtime wages under California Labor Code §§ 510, 1194; (2) failure to furnish accurate wage statements under California Labor Code §§ 226, 226.3; (3) waiting time penalties under California Labor Code §§ 201-2032; (4) unfair competition under California Business and Professions Code § 17200, *et seq.*; (5) civil penalties under PAGA, California Labor Code § 2698, *et seq.*; and (6) failure to pay overtime wages under Fair Labor Standards Act, 29 U.S.C. § 207 ("FLSA").  (*Id.*).

The gravamen of Plaintiffs' complaint in this action and the Muongkhot Action is that Defendant "has used a pay scheme to deprive Tradespeople of wages by paying a '*per diem*' in addition to hourly wages, but not including the *per diem* rate in its calculation of overtime pay."  (*Id.*).  As such, Defendant has allegedly not paid overtime using the proper regular rate of pay as required by the FLSA and California law.  (*Id.*).  Additionally, Plaintiffs allege derivative claims that Defendant failed to provide accurate wage statements, "and that certain Tradespeople . . . are due waiting time and PAGA penalties."  (*Id.*).

Plaintiffs seek preliminary approval of an $858,000 non-reversionary settlement with HL Welding to settle the California and federal overtime pay, and related claims on behalf of a class of Tradespeople ("Settlement Class Members"), as defined more specifically below.

//

//

## II.   **BACKGROUND**

### A.   Litigation History

On October 10, 2019, Plaintiff Muongkhot filed a class action complaint against HL Welding in San Diego Superior Court ("*Muongkhot* Action"). The initial complaint was filed on behalf of a putative class of Welders, Ship Fitters, and other similarly situated employees employed in California on or after October 10, 2015. Shortly after filing, Defendant disclosed that many members of the putative class signed arbitration agreements with HL Welding that included a class action waiver.

On February 13, 2020, Plaintiff Julio Rubio initiated the 65-day administrative exhaustion requirements with the California Labor and Workforce Development Agency ("LWDA") that were required before Mr. Rubio could join the *Muongkhot* Action as a representative plaintiff to assert a claim under PAGA.  Plaintiffs then filed an amended complaint in the *Muongkhot* Action wherein Rubio is named as a plaintiff and proxy for the state of California.

In July 2020, following initial discovery and meeting and conferring with Defendant's counsel, Plaintiff sought a stipulation to amend the operative complaint in the *Muongkhot* Action.  Defendant declined to stipulate, requiring Plaintiffs to file a Motion for Leave to Amend in the *Muongkhot* Action to add additional plaintiffs and provide an expanded class definition explicitly including all potential class positions in addition to Welders and Shipfitters.

On September 11, 2021, Plaintiff Yanez initiated this action.  (ECF No. 1).  Plaintiffs filed the First Amended Complaint on June 2, 2021, which added claims on behalf of an expanded statewide class, a nationwide collective action, and penalties under PAGA. (ECF No. 19).

The parties attended a mediation on March 24, 2021 with mediator Scott Markus. The mediation involved discussion of settlement of both this Action and the *Muongkhot* Action.  The parties entered into a signed Memorandum of Understanding ("MOU") to settle all of the class and PAGA claims in both cases. Prior to mediation, Defendant HL Welding shared with Plaintiffs' counsel detailed data regarding the class claims.  HL Welding provided supplemental data to Plaintiffs' counsel on June 2, 2021 that confirmed the relevant workweeks and pay periods that are the focus of the disputes herein, and which also confirmed when class members worked overtime hours that would be subject to additional compensation if Plaintiffs prevailed on the merits.  The parties spent the next two months negotiating the terms of the full settlement agreement presented in the instant motion, including the Settlement Notice to the class.

## B.    Settlement Agreement

In return for a release of all claims in this action, the *Muongkhot* Action, and any related claims arising from the same facts averred in the operative complaint, Defendant agreed to create a non-reversionary $858,000 Gross Settlement Amount ("GSA").  Defendant will separately pay the "employer's share" of employment taxes (FICA, FUTA, SDI) on any payments classified as W-2 income or wages, over and above the GSA.  (ECF No. 23 at 14).

The Settlement Class consists of: All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers at any time from October 1, 2015 and June 30, 2021 and who have not signed arbitration agreement with class/collective action waiver with HL Welding and who fall within one of the following two subclasses:

California Subclass: All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in California at any time between October 1, 2015 and June 30, 2021 (the "California Subclass Period") and who have not signed arbitration agreement with class/collective action waiver with HL Welding.

FLSA Subclass:  All current and former employees of HL Welding who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in states other than California at any time between September 15, 2017 and June 30, 2021 (the "FLSA Subclass Period") and who have not signed arbitration agreement with class/collective action waiver with HL Welding.

There are 80 individuals in the Settlement Class.

The Settlement Agreement provides for a non-reversionary $858,000 gross settlement fund.  Attorneys' fees and costs, class representative service awards, PAGA penalties to the California LWDA and PAGA Recipients, and the Settlement Administrator's fees and costs will be deducted from the gross settlement fund before funds are distributed to Class Members.  The remaining Net Settlement Fund of approximately $436,000 will be distributed to Class Members *pro rata* based on the number of weeks worked during the settlement class period. The disbursements will be made automatically to Class Members; they do not need to submit claims.  Class Members can expect to receive approximately $226.97 per workweek.  The average award will be $5,450 and the largest award will be over $19,500.

The Settlement Agreement also provides for $100,000 of the settlement funds to be allocated to PAGA claims, with $75,000 payable to the LWDA and

$25,000 to 477 "PAGA Recipients"[2] in consideration of a narrow release that releases only relate to PAGA claims and preserves these employees' rights to bring claims in arbitration for alleged non-payment of overtime and other Labor Code violations.

## C.     Updates Since Preliminary Approval

On December 9, 2021, the Settlement Administrator mailed notice of the settlement to 557 Settlement Class Members and PAGA Recipient individuals who were on the class/PAGA list provided by HL Welding.  79 of the notice packets sent by first-class mail were returned as undeliverable. The Settlement Administrator was able to locate new addresses for 74 of those, and re-mail the notice. The Settlement Administrator set up a toll-free number for telephone support, as set forth in the Notice Packet. The deadline for Class Members to exclude themselves from the Settlement Class, and to file objections to the Settlement Agreement, was January 24, 2022. No Class Member has opted out or objected.

Class Members submitted one timely challenge and one untimely challenge to the Settlement Administrator's estimates based on Defendant's records.  The Settlement Administrator worked with Defendant and Plaintiffs' counsel to resolve these disputes, and both disputes were rejected.

The Court held a hearing on March 15, 2022.  (ECF No. 41).  No objectors appeared and the parties did not raise any new issues.  (*Id.*).

## III.   DISCUSSION

Plaintiffs' motion seeks final approval of a class action settlement, an

---

[2] "PAGA Recipient(s)" means all current and former employees of Defendant who were employed as Welders, Ship Fitters, Pipefitters, Sheet Metal workers, Electricians, Machinists, Riggers and Tackers by Defendant in California at any time between February 13, 2019 and June 30, 2021 (the "PAGA Period").

FLSA collective action settlement, a PAGA settlement, attorneys' fees and costs, and class representative service awards.  The Court addresses each in turn.

## A.   Class Action Settlement

Courts require a higher standard of fairness when settlement takes place prior to class certification to ensure class counsel and defendants have not colluded in settling the case.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).  Ultimately, "[t]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).  Judicial policy favors settlement in class actions and other forms of complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989).

### 1.   *Class Certification*

Before granting final approval of a class action settlement agreement, the Court must first determine whether the proposed class can be certified. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees). Federal Rule of Civil Procedure 23 establishes four prerequisites for class certification: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Fed. R. Civ. P. 23(a).  Under Rule 23(b)(3), common

20cv1789-MDD

questions must predominate over individual questions and the class action device must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

In the Preliminary Approval Order, the Court found the proposed Settlement Class proper and conditionally certified it for settlement purposes.  (ECF No. 27) ("Preliminary Approval Order").  There have been no changes with respect to factors this Court considered in preliminarily certifying the Settlement Class.  Accordingly, the Court incorporates by reference the reasons set forth in its Preliminary Approval Order and reaffirms that the requirements of Federal Rule of Civil Procedure 23(a) and (b) have been satisfied.

### 2.   *Adequacy of Notice*

The Court must also determine whether the Class received adequate notice of the settlement.  *Hanlon v. Chrysler Corp.*, 150 F.3d at 1025.  The Court approved the Notice Packet and notice plan and authorized Simpluris, Inc. ("Simpluris") to act as the Settlement Administrator.  (Prelim. App. Order).

In support of the Final Approval Motion, Plaintiffs attached the Declaration of Meagan Brunner, a project manager for Simpluris.  (Brunner Decl. ¶ 1).  Pursuant to the Preliminary Approval Order and Proposed Settlement, Brunner mailed a Notice Packet on December 9, 2021, to 557 Settlement Class Members and PAGA Recipients.  (*Id.* ¶ 5).  As of February 14, 2022, 79 Notice Packets were returned by the post office.  (*Id.* ¶ 6).  Simpluris performed an advanced address search, or skip trace, on all Notice Packets returned without a forwarding address.  (*Id.*).  Of the 79 returned Notice Packets, 74 Notice Packets were re-mailed to either a newfound address or with forwarding addresses provided by USPS.  (*Id.*).  The

remaining 5 Notice Packets were undeliverable because Simpluris could not find a better address. (*Id*.). Simpluris also established and maintains a toll-free telephone number for the purpose of allowing Class Members to contact Simpluris and make inquiries regarding the settlement. (*Id*. ¶ 7). The system will remain in operation throughout the settlement administration process. (*Id*.).

Class Members had until January 24, 2022 to opt-out of the class, object to the settlement, or challenge Defendant's records that were pre-printed in their Notice Packet. (*Id*. ¶ 9). Simpluris received two challenges, both of which were rejected as invalid. (*Id*.). Simpluris did not receive any requests for exclusion or objections to the settlement. (*Id*. ¶¶ 10-11).

Having reviewed the Brunner Declaration, which provides that notice was disseminated to potential Settlement Class Members in the manner ordered by the Court in its Preliminary Approval Order, the Court finds that the Settlement Class received adequate notice of the Settlement.

The Settlement Administrator further declares the settlement administration costs are $11,000. (Brunner Decl. ¶ 17). The Settlement Administrator's duties include, but are not limited to establishing and maintaining a list of potential class members, mailing the Notice Packet to Class Members and PAGA Recipients, performing skip trace searches on Class Members and PAGA Recipients whose Notice Packets were returned undeliverable, establishing and maintaining a toll-free number to inquire about the settlement, recording and maintaining exclusions and objections, and processing and mailing settlement checks. (*See generally*, Brunner Decl.). Accordingly, the Court **APPROVES** the Settlement Administration costs in the amount of $11,000.

//

### 3.     *Fairness of the Settlement*

The Court must next determine whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(2)(C).  Factors relevant to this determination include:

> The strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026.  This fairness determination is committed to the sound discretion of the district court.  *Id.*

   i.     *Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation*

The Court must balance the continuing risks of litigation (including the strengths and weaknesses of the plaintiff's case),. with the benefits afforded to members of the Class, and the immediacy and certainty of a substantial recovery.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).  In other words, the Court must "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).

Plaintiffs acknowledge that if litigation were to continue in this case, they would have to move for class certification, conditional certification of the FLSA claims, and then prevail on summary judgment or at trial to succeed. (ECF No. 34 at 21-22).  Defendant would have opposed conditional certification of the FLSA claims and class certification under Federal Rule of

Civil Procedure 23.  (*Id.*).

Defendant has at all times maintained that it has properly classified the Tradespeople's *per diem* payments as reimbursement of travel expenses that are not subject to overtime premiums. In addition, Defendant maintains that Plaintiffs' claims are not amenable to class treatment, because (1) the job position and skills of the employees are different; (2) different HL Welding locations have different polices; (3) employees' residences and their relation to individual worksites vary greatly; (4) some Tradespeople signed arbitration agreements; and (5) some putative Class Members did not work any overtime. Defendant also contests many of the underlying wage and hour violations, contending that its overtime pay practices were at all times lawful and that *per diem* payments did not qualify as compensation on which overtime is due.  While Plaintiffs believe they could defeat these defenses, there remains a risk that the Court would not certify the class action and that the Court could agree with Defendant on the classification if its per diem payments and the particulars of the wage and hour violations.

In addition, proving damages may be challenging, as HL Welding argues that Class Members greatly exaggerate the number of overtime hours worked.

Furthermore, the costs of litigating an action on behalf of 80 Class Members and over 400 PAGA Recipients could have been significant, and Class Counsel would incur these costs at the potential risk of recovering nothing for any of them. The costs expended in litigating this case already exceed $10,000. Significant additional costs would have been incurred throughout the process of certifying the class, preparing for trial and appellate process.

Finally, litigating class certification, trying the liability issues and

damages, not to mention the possibilities of appeal, would delay resolution of this case by years.

Based on the foregoing, the Court finds that these factors weigh in favor of approving the Settlement. *See In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to a lengthy and expensive litigation with uncertain results.").

### ii.   Risk of Maintaining Class Action Status Throughout Trial

Pursuant to Rule 23, the Court may revisit a prior order granting certification of a class at any time before final judgment. *See* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."). Where there is a risk of maintaining class action status throughout the trial, this factor favors approving the settlement. *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 976 (E.D. Cal. 2012) (finding that the complexity of the case weighed in favor of approving the settlement).

In the Final Approval Motion, Plaintiffs submit that the class was not yet certified when the parties reached a settlement, and Defendants would have opposed certification of the putative class. (ECF No. 34 at 22). Additionally, "Defendant would like[ly] also file a motion for decertification of any class." (*Id.*). Accordingly, Plaintiffs' risk of maintaining class action status throughout trial supports final approval of the settlement.

### iii.   Amount Offered in Settlement

"In assessing the consideration obtained by the class members in a class action settlement, it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527 (internal citation and quotation marks

omitted).

The gross settlement amount of $858,000 supports final approval of the settlement.  According to Simpluris, the average estimated payment for California and FLSA Class Members is $5,450 if the Court approves the $100,000 PAGA allocation, class representative service awards, and attorneys' fees and costs.  (Brunner Decl. ¶ 15).  The highest payout is $19,519 and 21 Class Members will receive over $10,000.  (*Id.*).   Plaintiffs note that "the settlement provides a total benefit to the class that represents more than triple the core damages that could be recovered at trial on behalf of the class."  (ECF No. 34 at 23).  Accordingly, the Court finds that the amount offered in settlement weighs in favor of approving the settlement.

### iv.    The Stage of Proceedings

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair."  *DIRECTV, Inc.*, 221 F.R.D. at 528.  In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

The parties have been litigating this case since October 2019, when the Muongkhot Action was filed in State Court.  Plaintiffs' counsel extensively researched and investigated the case and engaged in multiple negotiations with Defendant's counsel to mediate the case.  The parties engaged in "thorough written discovery; the exchange of hundreds of pages of documents; interviews with Plaintiffs and class members; informal discovery as to class data and company policies; [and] analysis of Defendant's data and mediation preparation."  (*Id.* at 20).

As detailed by Plaintiffs in their Final Approval Motion, the Settlement

here was reached with the assistance of an experienced, neutral mediator after substantial investigation was completed by experienced Class Counsel. (ECF No. 34 at 20-21). The Court has already found, and again finds, that the Settlement "appears to be the product of serious, informed, non-collusive negotiations." (Prelim. App. Order at 14). As a result, the stage of proceedings in this case also supports final approval of the settlement.

### v. *Experience and Views of Counsel*

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." *DIRECTV, Inc.*, 221 F.R.D. at 528 (internal citation and quotation marks omitted).

Plaintiffs' counsel "have extensive wage and hour class action experience" and "are satisfied that the recovery for each Class Member is fair and reasonable taking into consideration the potential recovery as compared to the actual recovery, the stage of the litigation when the settlement was reached, risks inherent in any litigation and the specific risks in this case, and the reasonable tailoring of each Class Member's claim to the amounts received." (*Id.* at 21). As indicated in its Preliminary Approval Order, Plaintiffs' counsel have "'actively identified, investigated and prosecuted the claims that are the subject of this Settlement; they have decades of extensive experience in class action litigation, including wage-and-hour claims of the type asserted here, have been appointed class counsel in numerous cases; and have demonstrated that they have the ability and resources to vigorously pursue the claims asserted in this litigation.'" (Prelim. App. Order at 9-10) (quoting ECF No. 23 at 22).

1   Given counsel's experience with the case and expertise in wage and

2   hour class actions, the Court presumes counsel's recommendation to approve

3   the settlement is reasonable.  *See Boyd v. Bechtel Corp.*, 485 F. Supp. 610,

4   622 (N.D. Cal. 1979) ("The recommendations of plaintiffs' counsel should be

5   given a presumption of reasonableness.  Attorneys, having intimate

6   familiarity with a lawsuit after spending years in litigation, are in the best

7   position to evaluate the action . . . .").  Accordingly, the Court finds that

8   Plaintiffs' Counsel's experience and opinion that the settlement is fair weighs

9   in favor of approving the settlement.

10          *vii.   Class Reaction to the Settlement*

11          The Ninth Circuit has held that the number of class members who

12   object to a proposed settlement is a factor to be considered.  *Mandujano v.*

13   *Basic Vegetable Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).  The absence of

14   a large number of objectors supports the fairness, reasonableness, and

15   adequacy of the settlement.  *See In re Austrian & German Bank Holocaust*

16   *Litig.*, 80 F.Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of

17   objections are received, that fact can be viewed as indicative of the adequacy

18   of the settlement.") (citations omitted); *Boyd*, 485 F. Supp. at 624 (finding

19   "persuasive" the fact that 84% of the class did not file an opposition).

20          As detailed above, the Settlement Administrator had not received any

21   requests for exclusion from the settlement or objections to the settlement and

22   the time to do so has passed.  (Brunner Decl.).  The Court finds that the

23   reaction of the Class Members to the settlement weighs in favor of approving

24   the settlement.

25          *viii.  Conclusion*

26          Because the factors outlined above favor approving the settlement, the

27   Court **GRANTS** the motion to finally approve the class action settlement and

finds that the settlement is "fair, reasonable, and adequate" under Rule 23(e).

## B.   FLSA Settlement

FLSA claims can be settled only with the supervision and approval of the United States Department of Labor or a federal district court.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982); *see also Ambrosino v. Home Depot U.S.A., Inc.*, No. 11cv1319-L-MDD, 2014 WL 3924609, at *1 n.1 (S.D. Cal. Aug. 11, 2014) (collecting cases indicating that "district courts in the Ninth Circuit have followed *Lynn's Food Stores*"). A settlement warrants approval if it "reflect[s] a reasonable compromise of disputed issues." *Lynn's Food Stores*, 679 F.2d at 1354.

The first step in this analysis is determining whether there is a bona fide dispute over the defendant's liability to the plaintiffs under the FLSA. *See id.*  Plaintiffs point to several disputed factual and legal questions regarding class certification, arbitration, liability on the overtime claims, and issues relating to damages.  (ECF No. 34 at 22-23).  Each of these appears to be genuinely disputed.

Next, the Court considers whether the compromise is reasonable.  As explained above, "Class Members can expect to receive on average $5,450 with the highest Class Member receiving over $19,000," representing "more than triple the core damages that could be recovered at trial on behalf of the class." (*Id.* at 23).  Further, the parties engaged in substantial discovery prior to reaching a settlement. (*See id.* at 20).  Based on these factors, the Court finds that the settlement is reasonable and provides meaningful relief given the risks inherent in continued litigation over the issues disputed in this action.  The Court also finds that the scope of Plaintiffs' release of claims is appropriately limited to claims that were asserted in the Complaint or reasonably could have arisen out of the same facts alleged in the Complaint.

As such, the Court approves of the FLSA settlement.

### C.    PAGA Claims

Under PAGA, an "aggrieved employee" may bring an action for civil penalties for labor code violations on behalf of himself and other current or former employees.  Cal. Lab. Code § 2699(a).  A plaintiff suing under PAGA "does so as the proxy or agent of the state's labor law enforcement agencies." *Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009).  A PAGA plaintiff has "the same legal right and interest as state labor law enforcement agencies" and the action "functions as a substitute for an action brought by the government itself." *Id.*  "[A] judgment in that action binds all those, including nonparty aggrieved employees, who would be bound by a judgment in an action brought by the government." *Id.*  A plaintiff bringing a PAGA action owes a duty to their "fellow aggrieved workers" and "to the public at large." *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).

Civil penalties collected pursuant to PAGA are distributed between the aggrieved employees (25%) and the LWDA (75%).  Cal. Lab. Code § 2699(i).  Any settlement of PAGA claims must be approved by the Court.  Cal. Lab. Code § 2699(l)(2).  The proposed settlement must also be sent to the agency at the same time that it is submitted to the court.  *Id.*

There are "'fundamental[]' differences between PAGA actions and class actions." *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (quoting *Baumann v. Chase Inv. Servs. Corp.*, 747 F.3d 1117, 1123 (9th Cir. 2014)).  One of those differences is that "class certification is not required to pursue a PAGA representative claim." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 971 (N.D. Cal. 2019).

However, the California legislature, California Supreme Court, California Courts of Appeal, and LWDA have not set a standard for

approving PAGA settlements.  *Id.*  The LWDA has only stated that it is important that "the relief provided for under the PAGA be genuine and meaningful, consistent with the underlying purpose of the statute to benefit the public and, in the context of a class action, the court evaluate whether the settlement meets the standards of being 'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133 (quoting LWDA Response at 2-3).  Based on the LWDA's Response, district courts have applied "a Rule 23-like standard" asking whether the settlement of the PAGA claims is fundamentally fair, reasonable, and adequate.  *Haralson*, 383 F. Supp. 3d at 972.

Under PAGA, "the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation," except for provisions in which a penalty is specifically provided.  Cal. Lab. Code § 2699(f)(2).  A court may "award a lesser amount than the maximum civil penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code § 2699(e)(2).

Plaintiffs' motion confirms that a copy of the Settlement Agreement was sent to the LWDA at the time Plaintiffs filed their motion for preliminary approval.  (ECF No. 34 at 27).  With this procedural requirement satisfied, the Court next discusses whether the Settlement Agreement's $100,000 allocation to PAGA penalties is fundamentally fair, reasonable, and adequate.

Plaintiffs calculated the maximum PAGA penalties for the PAGA

Period to be $443,000 for the overtime wage claims, calculated based on the initial violation rates because Defendant may not be subject to the heightened rates for the subsequent violations.  (ECF No. 23-1 ¶ 38) ("Pogrel Decl. ISO Prelim. Approval").  Plaintiffs explain that any penalties under PAGA would depend on whether the PAGA Recipients' arbitration agreements would foreclose participation in a PAGA action in court and whether the trier of fact in a bench trial would reduce PAGA damages.  (*Id.*).  Additionally, Defendant "never agreed that Plaintiffs' damages calculations were accurate or reliable.  On the contrary, Defendant always contended . . . that Class Members estimates of their overtime hours were unreliable and exaggerated."  (*Id.* ¶ 39).

"[I]n actions involving wage and hour class claims and PAGA claims that settle, parties often minimize the total amount of the settlement that is paid to PAGA penalties in order to maximize payments to class members." *Mejia v. Walgreen Co.*, No. 2:19-cv-00218 WBS AC, 2021 WL 1122390, at *5 (E.D. Cal. Mar. 24, 2021).  The public policies underlying PAGA are also likely met here because the settlement more broadly provides a "robust" remedy for possible violations of the California Labor Code and the FLSA. (*See* Pogrel Decl. ISO Prelim. Approval ¶ 45) ("[T]he $435,000 fund that will be paid to California Subclass and FLSA Subclass members upon final approval of this settlement is more than 100% of Class Counsel's best estimate of the full value of the potential recovery for the California Subclass and FLSA Subclass members if they had worked overtime every week they were employed by HL Welding during the relevant periods."); *see O'Connor*, 201 F. Supp. 3d at 1134 ("[I]f the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.").

Although the Settlement Agreement's $100,000 allocation to PAGA

penalties amounts to roughly 22% of the maximum PAGA penalties, there have been no objections and the Court confirms its preliminary approval that the settlement for the Rule 23 class and FLSA collective action is robust enough to fulfill PAGA's purposes.

### D.   Class Representative Service Awards

"Incentive awards are appropriate only to compensate named plaintiffs for work done in the interest of the class as well as to compensate named plaintiffs for their reasonable fear of workplace retaliation." *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010).  Courts should ensure that an incentive award is not based on fraud or collusion.  *Id.*  In assessing the reasonableness of an incentive award, several district courts in the Ninth Circuit have applied the five-factor test set forth in *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995), which analyzes: (1) the risk to the class representative in commencing a class action, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.

Plaintiffs Yanez, Rubio, and Muongkhot ask for class representative service awards of $5,000 each.  Plaintiffs have provided declarations detailing the activities engaged in to benefit the class, and the risks undertaken in placing their names on the complaint and in actively participating in assisting in the prosecution of this case.  (ECF Nos. 32-2, 32-3, 32-4).

Plaintiffs devoted between five and 13 hours each assisting in the preparation, prosecution and settlement of this case.  They provided valuable information to Plaintiffs' counsel regarding a multitude of facts supporting

HL Welding's classification of its *per diem* payment and the substantive wage and hour violations that arose from that classification.  This included providing supporting documents and leads to other witnesses.  At each juncture of the lawsuit, they devoted time and effort, including assisting with the pre-lawsuit investigation.  They also participated in the settlement process, helping counsel prepare for mediation, reviewing the proposed settlement terms, and each signed the memorandum of understanding and final settlement agreement.  Their support for the settlement was not contingent upon their receipt of a service award.

In addition to the time and service provided noted above, Plaintiffs undertook significant risk and burden in coming forward and filing the lawsuit on behalf of fellow HL Welding Tradespeople.  Plaintiff Rubio was employed by HL Welding when he joined as a Plaintiff.  Plaintiffs took on the risk that other companies would not employ or work with them because of their participation in this action.  Finally, Plaintiffs understood that bringing this case as a class action would result in a delayed recovery, compared with filing an individual claim.  They forwent speedy resolution of their own individual claims to serve their coworkers.

The service awards sought are within the range of awards approved by other federal judges in class actions.  *See, e.g., Wellens v. Sankyo,* No. C 13-00581 WHO (DMR) 2016 WL 8115715, at *3 (N.D. Cal. Feb. 11, 2016) (awarding $25,000 for named plaintiffs); *Garner v. State Farm Mut. Auto. Ins.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *17 n.8 (N.D. Cal. Apr. 22, 2010) ("Numerous courts in the Ninth Circuit and elsewhere have approved incentive awards of $20,000 or more . . . ."); *Van Vranken*, 901 F.Supp. at 299-300 (approving $50,000 to one named plaintiff); *Alvarez v. Farmers Ins. Exchange,* No. 3:14-cv-00574-WHO, 2017 WL 2214585, at *1

20cv1789-MDD

(N.D. Cal. Jan. 18, 2017) (service award of $10,000 each was "fair and reasonable" where the aggregate amount of the service awards constituted 1.8% of the total settlement and the average payout to class members was $956.18); *Wannemacher v. Carrington Mortg. Servs., LLC*, No. SACV 122016 FMO (ANx), 2014 WL 12586117 (C.D. Cal. Dec. 22, 2014) (granting final approval and awarding enhancement 7.7 times greater than average class member recovery of $259); *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (final approval granted and awarding enhancements 166 to 1,000 times greater than value of $5, $15, and $30 vouchers).

Having considered the relevant factors, Plaintiffs' counsel's arguments, and the supporting declarations, the Court **APPROVES** the class representative service awards as reasonable.

## E.   Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non-taxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Under Ninth Circuit precedent, a court has discretion to calculate and award attorneys' fees using either the lodestar method or the percentage-of-the-fund method.  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002).  Despite the discretion afforded to the court, the Ninth Circuit recommends that district courts cross-check the award by applying a second method.  *In re Bluetooth Headset Prods. Liab. Litig.*, 654, F.3d 935, 944-45 (9th Cir. 2011).

The Ninth Circuit has held that 25% of the gross settlement amount is the benchmark for attorneys' fees awarded under the percentage-of-the-fund method.  *Vizcaino*, 290 F.3d at 1047.  "The benchmark percentage should be

adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage of recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

With respect to the percentage-of-the-fund method, case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small. *See* Rubenstein, Conte and Newberg, *Newberg on Class Actions* at § 15:83. California cases in which the common fund is small tend to award attorneys' fees above the 25% benchmark. *See Craft v. Cnty. of San Bernadino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (holding attorneys' fees for large fund cases are typically under 25% and cases below $10 million are often more than the 25% benchmark).

Regardless of whether the Court uses the percentage-of-the-fund approach or the lodestar method, the ultimate inquiry is whether the end result is reasonable. *Powers v. Eichen*, 229 F.3d 1249, 1258 (9th Cir. 2000). The Ninth Circuit has identified a number of factors that may be relevant in determining if the award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Vizcaino*, 290 F.3d at 1048-50.

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (internal citation omitted). The Ninth Circuit has cautioned that "to avoid abdicating its responsibility to review the agreement

for the protection of the class, a district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement." *Staton v. Boeing*, 327 F.3d 938, 963 (9th Cir. 2003).

Plaintiffs' counsel seek $286,000 in attorneys' fees. (ECF No. 34 at 28). This amounts to one-third of the gross settlement amount. In its Preliminary Approval Order, the Court found "no reason to award fees that exceed the Ninth Circuit's 25% benchmark" and instructed counsel to "show what special circumstances exist warranting a higher percentage in their motion for attorneys' fees and costs." (Prelim. Approval Order at 20). The Court first assesses the reasonableness of the requested fees by considering the factors set forth above. Then, the Court conducts a lodestar cross-check.

### 1.   *Reasonableness*

First, the Court considers the results achieved for the Class Members. *See In re Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained by the class."). The Gross Settlement Amount is $858,000 and the total average recovery is approximately $5,450 with the highest recovery amounting to more than $19,000. (ECF No. 34 at 23); (Brunner Decl. ¶15). Specifically, Class Counsel contend that a departure from the twenty-five percent benchmark under the percentage-of-the-fund approach is warranted given the "exemplary" recovery of more than "*triple* the full value of [Class Members'] overtime." (ECF No. 34 at 31). Further, no objections to the settlement have been made and no members opted out. (Brunner Decl. ¶¶ 10-11). This favors reasonableness.

Second, the Court considers the risks of the litigation. *Vizcaino*, 290 F.3d at 1048-49. Based on Plaintiffs' representations, if the case had proceeded through litigation, there would be a substantial risk that the Class may not be certified or recover at all. As noted herein, Plaintiffs highlight

legal uncertainties with respect to class certification, arbitration, liability on overtime claims, and issues relating to damages.  (ECF No. 34 at 22).  Accordingly, the second factor favors the reasonableness of the requested fees.

The third through fifth factors ask the Court to consider the skill required and the quality of work, the contingent nature of the fee, and the burdens carried by class counsel.  *See Vizcaino*, 290 F.3d at 1049-50.  Plaintiffs assert these factors support the requested fees.  (ECF No. 34 at 33).  Class Counsel contends they "employed their years of class action experience to streamline the litigation and optimize results."  (*Id.*).  For example, they "considered several other potential claims, but determined that focusing on the claims for those who did not sign arbitration agreements (and PAGA claim[s] only for those who did) greatly increased the odds of winning class certification and prevailing on the merits."  (*Id.*).  Also, Class Counsel was retained on a contingency basis, risking investment of "hundreds of hours with no guarantee of payment."  (*Id.*).  According to Class Counsel's briefing, the lodestar amount for the work performed is $353,426.  (*Id.* at 35-36).  Thus, Class Counsel is seeking roughly 80% of their lodestar figure.  This indicates that Class Counsel carried a moderate burden on a contingent fee basis, requiring both skill and quality of work.  As such, these factors weigh in favor of finding the requested fees reasonable.

Finally, the Court considers awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048-50.  The 33.33% award requested in this case is commensurate with percentage-of-the-fund awards made in other wage and hour class actions.  *See Garcia v. Lift*, No.1:18-cv-01261-DAD JLT, 2020 U.S. Dist. LEXIS 220762, at *43-58 (E.D. Cal. Nov. 24, 2020) (approving attorneys' fees of one-third of the common fund in a wage and hour class action); *Jamil*

*v. Workforce Res.*, No. 18-CV-27 JLS (NLS), 2020 U.S. Dist. LEXIS 2074902, at *11-12 (S.D. Cal. Nov. 5, 2020); *Howell v. Advantage RN, LLC*, No. 17-CV-883-JLS  (BLM), 2020 U.S. Dist. LEXIS 182505, at *14-15 (S.D. Cal. Oct. 1, 2020); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *9-14 (N.D. Cal. Dec. 11, 2015) (approving attorneys' fees of one-third of the settlement fund); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33% of the common fund and collecting cases regarding the same); *Burden v. SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013) (awarding 33% of the settlement fund); *Franco v. Ruiz Food Products, Inc.*, No. 1:10-cv-02354-SKO, 2012 WL 5941801, at *18 (E.D. Cal. Nov. 27, 2012) (awarding 33 percent of the common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (awarding 33.33% of the common fund).  Accordingly, Plaintiffs' request for an award of one-third of the gross settlement amount is a reasonable amount of attorneys' fees.

### 2.   *Lodestar Cross-Check*

District courts often conduct a lodestar cross-check to ensure that the percentage based fee is reasonable.  *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016); *Crawford v. Astrue*, 586 F.3d 1142, 1151 (9th Cir. 2009).  The lodestar method multiplies the number of hours reasonably expended by a reasonable hourly rate.  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  "The lodestar 'cross-check' need not be as exhaustive as a pure lodestar calculation" because it only "serves as a point of comparison by which to assess the reasonableness of a percentage award."  *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *14 (C.D. Cal. July 21, 2008).

Accordingly, "the lodestar can be approximate and still serve its purpose."[3] *Id.*

Class Counsel have worked 615 hours on this matter and their hourly rates range from $320 to $890.  (ECF No. 32-1 ¶46) ("Pogrel Dec. ISO Final Approval"). This amounts to $353,426.  (*Id.* ¶ 47).  Class Counsel declares that "[t]he hours reflected . . . do not include . . . . time overseeing the prepar[ation of] this motion, and additional time that will be required to finalize the settlement." (*Id.* ¶ 45).  Class Counsel anticipates the final lodestar amount to be roughly $370,000.  (*Id.* ¶ 47).  Based on the lodestar cross-check, Class Counsel's requested award is less than what they may be entitled to under the lodestar method.  Accordingly, this factor favors approval of the requested fee.

### 3. Conclusion

Because Class Counsel seeks one-third of the settlement fund, and because that amount is reasonable based on the factors outlined above and after conducting a lodestar cross-check, the Court finds the requested attorneys' fees are reasonable.  Accordingly, the Court **APPROVES** the requested amount of attorneys' fees in the amount of $286,000.

### F. Litigation Expenses

Class Counsel seeks reimbursement of their costs in the amount of $10,000.  (ECF No. 34 at 36).  Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award . . . nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P.

---

[3] Class Counsel did not provide full billing records for the Court's review. (ECF No. 34 at 35n.10).  The Court is dissatisfied with Class Counsel's decision to prevent the Court from conducting a more thorough and accurate lodestar calculation.  Nonetheless, the Court approves the requested fee award.

23(h).  Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case.  *See In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970)); *Staton*, 327 F.3d at 974.

Class Counsel's expenses include costs for filing, courier charges, mediation, in house copies, postage, legal research, pacer fees, PAGA filing fees, expert fees, CourtCall, and Vendor Copy Costs.  (Pogrel Decl. ISO Final Approval, Exhibit 5).  A review of Class Counsel's declaration and chart of costs is reasonable.  (*Id.*).  Accordingly, the Court **APPROVES** Class Counsel's litigation expenses of $10,000.

## IV.   CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Final Approval of Class Action, FLSA Collective Action, and Private Attorneys' General Act Settlement, including Plaintiffs' request for attorneys' fees, costs and expenses, and Class Representative Service Awards.  (ECF No. 32).  The Court finds the proposed settlement of this class action appropriate for final approval pursuant to Federal Rule of Civil Procedure 23(e), and the law governing FLSA and PAGA actions.  The Court **ORDERS** the parties to implement the Settlement Agreement according to its terms and conditions and this Court's final order.

Specifically, the Court **APPROVES** settlement administration costs of $11,000, attorneys' fees of $286,000 to Class Counsel, litigation costs of $10,000 to Class Counsel, and $5,000 each to named Plaintiffs Luis Lopez Yanez, Kayasone Muongkhot, and Julio Rubio for class representative service awards.

Accordingly, this action is **DISMISSED WITH PREJUDICE**.  The

Clerk of Court is instructed to enter final judgment in accordance with this Order.

**IT IS SO ORDERED**.

Dated:   March 15, 2022

Hon. Mitchell D. Dembin
United States Magistrate Judge

20cv1789-MDD